## HANSFORD v. HANSFORD.

1. Upon a bill filed for divorce, where a clause is inserted invoking the jurisdiction of the chancellor to dispose of the minor children, it is proper for the court, after decreeing a divorce *a vinculo* to proceed to determine which parent shall be intrusted with the custody of the minor children.

2. When the bill charges the complainant to be a free man of color, and no question is raised in the court below to the frame of the bill, which prays a divorce, it will be presumed in the appellate court, from the allegation in the bill, that the parties were lawfully married, according to the laws of Alabama, that the defendant is also a free person of color. Also, in the absence of exception, that blacks and mulattoes examined as witnesses, are also free.

Writ of Error to the Court of Chancery for the 11th District.

BILL by Girard Hansford, describing himself as a free man of color, against Maria Hansford, who is not described as colored, his wife, for a divorce. The bill charges that the parties were married on the 15th November, 1825, in accordance with the laws of Alabama. The ground for filing the bill is the alledged adultery of the wife, and charges the birth of a child, pronounced by individuals to be white, with blue eyes, and it is charged that the defendant admitted the child was white, and she declared her intention that all subsequently born should be of that color. The bill, in addition to the prayer for divorce, prays that the children of the marriage may be committed to the complainant.

The chancellor, at the hearing, considered the adultery established by the proofs taken in the cause, and decreed a divorce. The testimony in the cause is chiefly by witnesses who state in their answers, themselves to be either blacks or mulattoes. After the decree, but at the same term, the master, in pursuance of a previous order to that effect, reported, that it appeared from the testimony in the cause, that the husband

71

was a proper person to have the custody of the minor children of the marriage, and an appeal being taken from his report, the chancellor confirmed it, and decreed accordingly, allowing the mother to visit and see them at all reasonable times.

It is now assigned that these decrees are erroneous.

T. WILLIAMS, for the plaintiff in error, argued, the decree should be reversed—

. 1. Because the defendant must be presumed to be white, and the marriage therefore void. [1 Ala. Rep. N. S. 449.] The same presumption arises from the charge in the bill, that a white child was born, and her declaration that she intended to have such only.

2. If this presumption cannot be drawn, then, if she is colored, the presumption is she is a slave, and as such incapable of contracting marriage.

3. The decree was pronounced on incompetent evidence, as the witnesses, many of them, were colored, and the presumption is, they are slaves, and therefore incompetent as such, and whether slaves or free, not competent if one of the parties is white. [Dig. 600, § 8.]

4. The chief objection, however, to the decree is, that it takes the children from the mother. This jurisdiction cannot be exercised by the chancellor, on a bill for divorce, but is proper upon a petition filed for that purpose. [Dig. 171, §§ 20, 21.]

L. E. PARSONS, for the defendant in error, insisted, the presumption in this court will be, that both parties are colored. If the fact of color is as the plaintiff in error supposes, the questions should have been raised in the court below by demurrer, or exception in some way. The adjustment of the family, after the divorce, is one of the incidents to the decree, and certainly within the powers of the chancellor, by the terms of the statute.

GOLDTHWAITE, J.—1. The chief point in this cause is that part of the decree which determines the children shall be committed to the charge of the father. It is now said the

Hansford v. Hansford.

chancellor had no jurisdiction over the subject matter, or if he has, that it can be exercised upon petition only, and when that object is the sole matter of investigation. The legislation upon the subject, seems to be confined to two acts, both passed at the same session of the legislature, the one providing for the disposition of the children in all cases of separation, when neither party shall obtain a divorce; the other investing the court of chancery with power, in cases of separation, to determine the same questions with respect to the children, upon the petition of either party. [Dig. 171, §§ 20, 21.] We incline to think these statutes were intended to cover the whole subject matter, as it can scarcely be intended, the power is not given where the parties are actually divorced, and is so where they are merely separated. The first act seems to contemplate the action of the chancellor, when there is an ineffectual attempt to procure a divorce, but the latter extends to all cases where a separation exists, and warrants the court to determine the matter on the petition of either party. When the bill is filed for a divorce, either *a vinculo* or *a mensa et thoro*, it is usually preceded by the actual separation of the parties, and when the ground assigned is adultery, this is the necessary relation of the parties to each other, as otherwise a *condonation* of the offence will be presumed. We infer, the legislature considered it as free from doubt, that when the jurisdiction of the chancellor was extended to divorce cases, the power to dispose of the minor children was a necessary incident of this jurisdiction. It will be remembered, that the jurisdiction over the minor children of a family, has been claimed for courts of chancery by eminent jurists, independent of any statutes, on the ground that the government is the *parens patræ*. [2 Fon. Eq. book 2, ch. 2, § 1, note a: De Manneville v. De Manneville, 10 Vesey, 63; Wellesly v. Duke of Beaufort, 2 Russ. 20.] Whilst others assert the exercise of this jurisdiction is a clear usurpation of power in that court. [Hargrave's Notes to Coke on Litt. 89, a, note 70, § 16; See cases cited in 2 Story's Eq. § 1327 to 1336.] Whatever may be the origin of this jurisdiction in England, we think, that with us, whether it is referred to the general powers of chancery, or to the particular statutes to which we have referred, it must be taken as exist-

ing, and that it may be exercised whenever a bill is filed for a divorce, as incidental to the peculiar jurisdiction exercised by the court of chancery, over that subject, when the aid of the court is specifically invoked. Such seems to be the course pursued in this instance, and the decree is not objectionable for any defect of jurisdiction in this respect. The correctness of the decree upon the evidence itself is not called in question.

2. With reference to the other matters urged against the frame of the bill, and in the nature of exceptions to the evidence, they are raised in this court without having been taken in the court below. However forcible the objections might appear, if they arose upon a demurrer to the bill, or upon exceptions to the witnesses, they are entitled to no weight in an appellate court, as then the presumption is, that both parties and witnesses are free persons of color, and it arises alike from the allegations of the bill, that the parties were married according to the laws of Alabama, and from the omission to take exception in the court below—where the bill, if defective, could be amended.

We are unable to perceive any error in the decree. Affirmed.