This is an appeal from a judgment awarding damages to Brasher, in a suit against the City, alleging negligent maintenance of a sidewalk in a public park. We affirm.
On December 26, 1974, Cammie Olivia Brasher fell and sustained hip injuries, while walking on a sidewalk located on the perimeter of Woodrow Wilson Park. She fell when she stubbed her foot on an elevated portion of concrete walkway.
This specific sidewalk — Wilson Park is criss-crossed with walkways — leads from a public street to the entrance of the Jefferson County Courthouse. Not only were there elevated portions of concrete, but also there were cracks and depressions in the sidewalk. There was testimony that these conditions had existed for a long period of time prior to Mrs. Brasher's fall. There had been previous injuries suffered by persons as a result of stumbling and falling on the sidewalk. The Engineering Department, as well as the City Legal Department, had been warned on numerous occasions, by the Jefferson County Director of General Services of the delapidated condition of the sidewalk. Yet, the City did nothing to improve or to repair it. As late as August 16, 1974, the Jefferson County Commissioner of Public Improvements wrote a letter to a City Councilman stating:
 "The sidewalk from Seventh Avenue on the Woodrow Wilson Park side of the Courthouse is absolutely in pitiful condition. The concrete is broken, sunken, and many times covered with mud. It is not only unsightly but is absolutely dangerous!
 ". . . I sure would appreciate your forwarding this request to the proper department and using your influence to see that it is taken care of."
The issue before this court is whether the City is immune from suit, and liable for damages resulting from the negligent maintenance of the sidewalk. On this issue we are presented with an attack upon the viability of Jones v. City ofBirmingham, 284 Ala. 276, 224 So.2d 632 (1969), where this court held the City of Birmingham immune from liability for a defect in a walkway within Woodrow Wilson Park under Tit. 62, § 660, Code of Alabama 1940 (Recomp. 1958).[1] Seven years later, Justice Bloodworth, in a specially concurring opinion in Walkerv. City of Birmingham, 342 So.2d 321 (Ala.Sup.Ct. 1976), addressed the Jones case:
 "However, I think the tort counts are good and therefore I concur in the present judgment of reversal as to those counts. I do not think the statutes provide governmental immunity from tort to the City of Birmingham in suits by persons injured on sidewalks maintained by the city in public parks.
 "Tit. 37, § 502, Code of Alabama 1940 and City of Bessemer v. Whaley, 187 Ala. 525, 65 So. 542
(1914), specifically provide for municipal tort liability for injuries suffered due to defects in sidewalks, inter alia, cf. Jones v. City of Birmingham, 284 Ala. 276, 224 So.2d 632 (1969). Although citing this rule of law, Jones refuses to hold that `[a] public way in a park is still a public way.' It expressly holds that a public sidewalk entirely within a public park is not an `ordinary public sidewalk' and therefore falls within the governmental immunity granted the city in the operation of a public park. I would overrule Jones.
 "I would hold that the exception in Tit. 62, § 660, Code of Alabama 1940, that governmental immunity does not extend to `injuries arising out of defects in highways . . .' applies here. Sidewalks *Page 1155 
are part of the system of public highways notwithstanding their being totally encompassed by a public park. The intention of the legislature was to except injuries therefrom from the then existing governmental immunity, in my judgment."
Walker was a suit for injuries sustained on a sidewalk in the Jimmy Morgan Zoo in Birmingham. Justice Embry, writing the primary opinion, stated that although a contract action was available, the City was immunized from tort suits. He was joined by Justice Beatty. However, the remainder of the court had somewhat differing views. Justice Bloodworth was of the opinion that the plaintiffs had an actionable tort claim, but that a contract action was improper. Justices Maddox and Faulkner concurred in this view. Finally, four members of this court, Justice Jones, authoring a specially concurring opinion, joined by Chief Justice Heflin and Justices Almon and Shores, felt that the plaintiffs had both a tort and contract action. Although arising in a somewhat atypical posture, Justice Bloodworth's concurring opinion in Jones became the opinion of this court when his view of the tort claim was joined in by six other justices. See 21 C.J.S. Courts § 189b. Thus, Jones was overruled.
The City contends that any overruling of Jones should operate prospectively only. Adoption of this view would require reversal of the instant case since Walker was decided almost two years after Mrs. Brasher's injury. We decline to so limit the application of Walker.
 "As a general rule, the effect of overruling a decision and refusing to abide by the precedent there laid down is retrospective, as well as prospective, and makes the law at the time of the overruled decision as it is declared to be in the last decision. . . . The distinction has been made that if the overruled decision is one dealing with procedural or adjective law the effect of the subsequent overruling decision is prospective only; but if the overruled decision is one dealing with substantive law the effect of the subsequent overruling decision is retroactive. In any event, a court of final decision may expressly define and declare the effect of a decision overruling a former decision, as to whether or not it shall be retroactive, or operate prospectively only, and may, by a saving clause in the overruling decision, preserve all rights accrued under the previous decision." 21 C.J.S. Courts § 194a (Footnotes omitted.)
Walker was not limited to prospective application at the time of its issuance, and we are not now presented with a contract right or vested right which would compel such application. Cf.Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975); 21 C.J.S. Courts § 194b.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.
[1] Title 62, § 660, Code of Alabama 1940 (Recomp. 1958), was declared unconstitutional in Peddycoart v. City of Birmingham,354 So.2d 808 (Ala.Sup.Ct. 1978). The parties agree that the City is now governed by Title 37, § 502, Code of Alabama 1940 (Recomp. 1958).