MOORE, Chief Justice.
Carolyn Sue Christopher (“Carolyn”) petitioned this Court for a writ of certiorari to review the judgment of the Court of Civil Appeals affirming an order requiring her to pay postminority educational support on behalf of her child, C.C. See Christopher v. Christopher, 145 So.3d 42 (Ala. Civ.App.2012). In Ex parte Bayliss, 550 So.2d 986 (Ala.1989), this Court interpreted § 30-3-1, Ala.Code 1975, as authorizing a trial court in a divorce proceeding to require a noncustodial parent to pay college expenses for children past the age of majority. We granted Carolyn’s petition to consider whether Bayliss was correctly decided, and we now reverse and remand.

I. Procedural History

Carolyn and her husband, Charles Phillip Christopher (“Phillip”), were divorced by a judgment of the trial court in 2010. At the time of the divorce they had one adult child and two children under the age of majority, a son C.C. and a daughter Ca.C. On April 18, 2011, four days before C.C.’s 19th birthday, Phillip petitioned the trial court to order Carolyn to pay a portion of C.C.’s college expenses. Carolyn answered that she was financially unable to contribute to C.C.’s college education and that this Court’s holding in Bayliss authorizing awards of postminority educational support was unconstitutional.
After a trial, the court entered a judgment requiring Carolyn to pay 25% of C.C.’s college expenses of $9,435 per semester. The Court of Civil Appeals affirmed the college-expense award as a proper exercise of the trial court’s discretion under Bayliss. Finding that Bayliss, as Supreme Court precedent, was binding, the Court of Civil Appeals affirmed the trial court’s judgment, denying Carolyn’s constitutional challenge.[1]

II. Standard of Review

The issue in this appeal is whether the Bayliss Court correctly interpreted Alabama law to authorize a trial court to award postminority educational support when application is made before the child attains the age of majority. “[0]n appeal, *64 the ruling on a question of law carries no presumption of correctness, and this Court’s review is de novo.” Ex parte Graham, 702 So.2d 1215, 1221 (Ala.1997). “The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.” I MED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992).

III. Analysis

A. The meaning of the term “child" as a minor

The Alabama child-custody statute is functionally unchanged from its origin in 1852. “Upon granting a divorce, the court may give the custody and education of the children of the marriage to either father or mother, as may seem right and proper....” §30-3-1, Ala.Code 1975. The statute neither defines “children” nor designates when a child becomes an adult and thus ineligible for parental support.
“When interpreting a statute, a court must first give effect to the intent of the legislature....
[[Image here]]
“... To discern the legislative intent, the Court must first look to the language of the statute. If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, there is no room for judicial construction.”
City of Bessemer v. McClain, 957 So.2d 1061,1074 (Ala.2006).
The “plain and ordinary meaning” of statutory language may often be found in a dictionary. “What is a dictionary definition if not an assertion of that very meaning that an ordinary person would give a particular word?” Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co., 628 So.2d 560, 562 (Ala.1993). See 3A Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 69:9 (7th ed. 2007) (hereinafter “Sutherland”) (“When the legislature has chosen not to define a word, the ‘plain and ordinary meaning’ can be ascertained from a dictionary.”). The term “children” in § 30-3-1, referring to giving “the custody and education of the children of the marriage to either father or mother” appears in the context of the parent-child relationship. The “parent-child relationship,” according to a leading legal dictionary, is “[t]he association between an adult and a minor in the adult’s care, esp. an offspring or an adoptee. The relationship imposes a high duty of care on the adult, including the duties to support, to rescue, to supervise and control, and to educate.” Black’s Law Dictionary 1402 (9th ed. 2009). The dictionary not only defines “child” in the parent-child context as a minor, but also refers to the fact of custody (“in the adult’s care”) and to the responsibility of the parent to “educate,” both of which § 30-3-1 expressly addresses. Therefore, the plain meaning of “children” as that term is used in § 30-3-1 unambiguously means “minors.” See also Black’s Law Dictionary, at 271 (primarily defining “child” as “[a] person under the age of majority”).[2] Compare Smith v. Smith, 433 Mich. 606, 612, 447 N.W.2d 715, 716 (1989) (consulting Webster’s Ninth New Collegiate Dictionary (1985) to shed *65 light on the meaning of “child” in a child-custody statute).
As further confirmation that the phrase “children of the marriage” refers to minors, we may look to the definition of “child” under the common law as applied in divorce proceedings. Customarily, “the [child-support] statute has been construed in aid of the common law and the original jurisdiction of equity for the protection, education, and well-being of the helpless infants that are drawn within the jurisdiction of the courts in such unfortunate controversies between parents....” Ex parte State ex rel. Tissier, 214 Ala. 219, 220, 106 So. 866, 867 (1925) (construing § 7422, Ala. Code 1923 (emphasis added)). “These provisions of the statute in some respects are declaratory of the common law, and the original jurisdiction of the chancery court over infants has been held unimpaired thereby.” Id.
“[Statutes [in derogation or modification of the common law] are presumed not to alter the common law in any way not expressly declared.” Arnold v. State, 353 So.2d 524, 526 (Ala.1977). See also Dennis v. State, 40 Ala.App. 182, 185, 111 So.2d 21, 24 (1959) (noting “a rule of statutory construction that statutes should be construed in reference to the principles of the common law”); Weaver v. Hollis, 247 Ala. 57, 60, 22 So.2d 525, 528 (1945) (noting that statutes must be read “in the light of the common law”); Standard Oil Co. v. City of Birmingham, 202 Ala. 97, 98, 79 So. 489, 490 (1918) (“[C]ommon-law words [are to be construed] according to their common-law meaning.”); Cook v. Meyer Bros., 73 Ala. 580, 583 (1883) (“[T]he common law prevails, save so far as it is expressly or by necessary implication changed by the statute.”); 2B Sutherland § 50:3 (noting that statutes “should not be considered to make any innovation upon common law which the statute does not fairly express”); 3A Sutherland § 69:9 (“When a term is not statutorily defined, courts presume the legislature retained the common-law meaning.”); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 320 (2012) (“The age-old principle is that words undefined in a statute are to be interpreted and applied according to their common-law meanings.”).
At common law the parental-support obligation ceased at the age of majority. “A father is bound, by the common law, to support and educate his children during their minority.... ” Beasley v. Watson, 41 Ala. 234, 240 (1867) (emphasis added). See also Coleman v. Coleman, 198 Ala. 225, 226, 73 So. 473, 474 (1916) (“A court of chancery has jurisdiction over the custody of infant children.... ” (referring to § 3808, Ala.Code 1907, a predecessor to § 30-3-1 (emphasis added))); Alston v. Alston, 34 Ala. 15, 27 (1859) (“[T]he father is bound to support his minor children.... ” (emphasis added)); Hansford v. Hansford, 10 Ala. 561, 563 (1846) (“[W]hen the jurisdiction of the chancellor was extended to divorce cases, the power to dispose of the minor children was a necessary incident of this jurisdiction.” (emphasis added)); Godfrey v. Hays, 6 Ala. 501, 502 (1844) (noting “the obligation of the father to support his children during minority ” (emphasis added)).
Before the 1980s, this Court uniformly defined “child” in the context of divorce as a minor. See, e.g., Hutton v. Hutton, 284 Ala. 91, 222 So.2d 348 (1969) (noting that the obligation to make child-support payments ceases at the age of majority); Reynolds v. Reynolds, 274 Ala. 477, 479, 149 So.2d 770, 771 (1961) (“The general rules of parent and child ... ordinarily apply only while the child is under the age of majority.”); Murrah v. Bailes, 255 Ala. 178, 180, 50 So.2d 735, 736 (1951) (stating *66 that child-support statutes relating to divorce or separation “clearly apply only to minor children”).

B. Departing from the ordinary and common-law meaning of “child"

In 1983 this Court recognized an exception to the ordinary and common-law definition of “child” as a minor in favor of a “majority trend” in courts of other states to require a noncustodial parent to support a disabled child past the age of majority. Ex parte Brewington, 445 So.2d 294, 296 (Ala.1983) (affirming an order requiring support payments past the age of majority for a child suffering from a birth defect and permanently confined to a wheelchair). Finding the “narrow interpretation” of the term “children” as minors to be “unacceptable,” the Court stated: “[W]e believe the legislature intended that support be provided for dependent children....” Id. See Fincham v. Levin, 155 So.2d 883, 884 (Fla.Dist.Ct.App.1963) (finding that “most jurisdictions hold that where a child is of weak body or mind, unable to care for itself after coming of age, the parental rights and duties remain practically unchanged”).
Using as a springboard the substitution of “dependents” for “children” in Brewington, the Court in Ex parte Bayliss, 550 So.2d 986 (Ala.1989), “expanded” the Brewington exception to require a noncustodial parent to pay college expenses for children who had passed the age of majority. 550 So.2d at 989, 991-92. Regardless of whether the common law might have recognized an obligation to support disabled children past their majority, an issue not before us, it certainly never contemplated granting a divorce court the power to require payment for postminority educational expenses. The common law recognized no such obligation, nor does § 30-3-1. The Court candidly acknowledged that “[t]he Legislature of Alabama has not enacted a specific statutory change in its domestic relations laws to permit post-minority support for college education.” 550 So.2d at 989. Undeterred, the Court held that a divorce court may “derive such jurisdiction from the absence of restrictive language” in § 30-3-1. Id.
Courts, however, may not interpret statutes to compensate for omissions. “ ‘[I]t is not the office of the court to insert in a statute that which has been omitted[;] ... what the legislature omits, the courts cannot supply.’ ” Pace v. Armstrong World Indus., Inc., 578 So.2d 281, 284 (Ala.1991) (quoting 73 Am.Jur.2d Statutes § 203 (1974)). See also Elmore Cnty. Comm’n v. Smith, 786 So.2d 449, 455 (Ala.2000) (“We will not read into a statute what the Legislature has not written.”); Ex parte Jackson, 614 So.2d 405, 407 (Ala. 1993) (“The judiciary will not add that which the Legislature chose to omit.”); Siegelman v. Chase Manhattan Bank (USA), Nat’l Ass’n, 575 So.2d 1041, 1045 (Ala.1991) (“[A] court may explain the language but it may not detract from or add to the statute.”); Dale v. Birmingham News Co., 452 So.2d 1321, 1323 (Ala.1984) (“[W]e deem it inappropriate to engraft by judicial fiat a change the legislature has apparently not chosen to make.”); and Ex parte Jones, 444 So.2d 888, 890 (Ala.1983) (“We cannot read into the statute a provision which the legislature did not include.”).
Indeed, we have held that “to change the statute under guise of construction, [is] an infringement upon the legislative prerogative.” Holt v. Long, 234 Ala. 369, 372, 174 So. 759, 760 (1937). See also Alabama Indus. Bank v. State ex rel. Avinger, 286 Ala. 59, 62, 237 So.2d 108, 110-11 (1970) (“The office of interpretation is not to improve the statute; it is to expound it....”); Echols v. State, 24 Ala. *67 App. 352, 353, 135 So. 410, 411 (1931) (“[C]ourts are without authority to add to or take from the written statutory law as passed by the Legislature and approved.”). Federal courts follow the same principle. See Ali v. Federal Bureau of Prisons, 552 U.S. 214, 228, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008); Badaracco v. Commissioner of Internal Revenue, 464 U.S. 386, 398, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984) (“Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.”); and Nguyen v. United States, 556 F.3d 1244, 1256 (11th Cir.2009) (“We are not authorized to rewrite, revise, modify, or amend statutory language in the guise of interpreting it....”).

C. Departing from the statutory definition of age of majority

Although it is not “this Court’s role to assume the legislative prerogative to correct defective legislation or amend statutes,” Siegelman, 575 So.2d at 1051, the Bayliss Court nonetheless interpreted the child-support statute to authorize postmi-nority support for college education. The age of majority, however, is controlled exclusively by statute. “ ‘It is the business of the law-making body to determine the age of majority. The courts are without power either to raise or lower the age so fixed.’ ” Davenport v. Davenport, 356 So.2d 205, 209 (Ala.Civ.App.1978) (quoting Shoaf v. Shoaf, 282 N.C. 287, 291, 192 S.E.2d 299, 303 (1972)). See also Beavers v. Southern Ry., 212 Ala. 600, 602, 103 So. 887, 889 (1925) (“[I]n law a person is an infant until he arrives at his majority as fixed by law....”); Hutchinson v. Till, 212 Ala. 64, 65, 101 So. 676, 676 (1924) (noting that “[t]he Legislature has full power to prescribe” the age of majority).
When the legislature reduced the age of majority from 21 to 19 in 1975,[3] this Court did not acquire the privilege to raise it back to 21 or higher to serve a “public policy” it thought desirable. By reducing the age of majority by two years, the legislature not only bestowed the burdens and privileges of adulthood upon persons not formerly entitled to them, but also relieved their parents of responsibility for their support during the same period. By reweighing and altering that balance as it pertains to college education, the Bayliss Court improperly overrode the statutory designation of the age of majority.

TV. Stare Decisis

Stare decisis is the principle that, all things being equal, cases should be decided as they have been in the past. See Black’s Law Dictionary 1537 (9th ed. 2009) (defining stare decisis as “[t]he doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation”). The Bayliss Court openly confessed its departure from this principle, stating: *68 550 So.2d at 993-94. By departing from settled precedent on the meaning of the term “children” in § 30-3-1 and expressly overturning eight cases that conformed to that precedent, 550 So.2d at 994, the Bay-liss Court indeed “unsettled” the law. The question arises whether we are bound by the principle of stare decisis to follow Bayliss, even though that opinion itself repudiated the principle. We are not so constrained.
*67 “The Latin phrase ‘stare decisis et not quieta movere ’ (stare decisis) expresses the legal principle of certainty and predictability; for it is literally translated as ‘to adhere to precedents, and not to unsettle things which are established.’ Black’s Law Dictionary (5th ed. 1979). By this opinion, we are unsettling things that have been established by the appellate court of this State (the Court of Civil Appeals) that has exclusive appellate jurisdiction of ‘all appeals in domestic relations cases, including annulment, divorce, adoption and child custody cases.’ Ala.Code 1975, § 12-3-10.”
*68 “ ‘Although this Court strongly believes in the doctrine of stare decisis and makes every reasonable attempt to maintain the stability of the law, this Court has had to recognize on occasion that it is necessary and prudent to admit prior mistakes and to take the steps necessary to ensure that we foster a system of justice that is manageable and that is fair to all concerned.’ ”
Ex paite Capstone Bldg. Corp., 96 So.3d 77, 88 (Ala.2012) (quoting Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala.1997)). See also Ex parte Capstone, 96 So.3d at 89 n. 9 (“What would be truly ‘distressing’ would be if, when this Court has made an error ... it would be unwilling to ‘confess’ that error and set the law right.”); Jackson v. City of Florence, 294 Ala. 592, 598, 320 So.2d 68, 73 (1975) (“As strongly as we believe in the stability of the law, we also recognize that there is merit, if not honor, in admitting prior mistakes and correcting them.”).
Federal law observes the same principle. “[S]tare decisis is a principle of policy and not a mechanical formula of adherence to the latest decision.” Helvering v. Hallock, 309 U.S. 106, 119, 60 S.Ct. 444, 84 L.Ed. 604 (1940).
“Our problem then is not that of rejecting a settled statutory construction. The real problem is whether a principle shall prevail over its later misapplications. Surely we are not bound by reason or by the considerations that underlie stare decisis to persevere in distinctions taken in the application of a statute which, on further examination, appear consonant neither with the purposes of the statute nor with this Court’s own conception of it.”
309 U.S. at 122. The clear import of the Alabama child-support statute (§ 30-3-1), traceable to its origin in 1852, is that the term “children” does not describe adults, but only those under the age of majority. This principle, unchanged by statute, should “prevail over its later misapplication[ ]” in Bayliss. See Ex paite Capstone, 96 So.3d at 89 (“ ‘Abrogating the errant precedent, rather than reaffirming or extending it, might better preserve the law’s coherence....’” (quoting Citizens United v. Federal Election Comm’n, 558 U.S. 310, 378-79, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) (Roberts, C.J., concurring))); id. at 87 (reaffirming a rule that had been recognized as the law of Alabama for many years before the overruled decision); Foremost Ins. Co., 693 So.2d at 417-21 (overruling cases that had wrongly overturned prior settled precedent).
Reversing Bayliss and returning to the legislature the power to decide if postminority educational support should be authorized in a divorce case does not make new law but, instead, “vindicate^] the old one from misrepresentation.” 1 Sir William Blackstone, Commentaries *70. Thus, our decision in this case is remedial, returning the stream of judicial power to its proper channel. “‘Courts do not and cannot change the law by overruling or modifying former opinions. They only declare it by correcting an imperfect or erroneous view. The law itself remains the same....’” G.P v. A.A.K., 841 So.2d 1252, 1255 n. 1 (Ala.Civ.App.2002) (quoting Cri *69 gler v. Shepler, 79 Kan. 834, 842, 101 P. 619, 621 (1909)).

V. The Acquiescence Doctrine

When this case was before the Court of Civil Appeals, two judges expressly called for overruling Bayliss. See Christopher v. Christopher, 145 So.3d 42, 59 (Ala.Civ.App.2012) (Thomas, J., concurring specially, joined by Bryan, J.). Two others, addressing the suggestion that Bayliss “usurped the province of the legislature,” expressed doubt about the original validity of Bayliss but felt that time and legislative silence had transformed the errors of Bayliss into accepted law.
“Although [it] might have been true when Bayliss was decided almost 24 years ago [that the Court usurped the province of the legislature], had the legislature disagreed with our supreme court’s interpretation of § 30-3-1, it could have enacted a law modifying or abrogating the holding in Bayliss. However, it has chosen not to do so. Because the legislature has not acted on the holding in Bayliss in more than two decades, I believe that it has acquiesced to that holding. See Hexcel Decatur, Inc. v. Vickers, 908 So.2d 237, 240-41 (Ala.2005), and the cases cited therein.”
145 So.3d at 60 (Thompson, P.J., concurring in the result, joined by Pittman, J.). Phillip argues in his appellate brief that the legislature has acquiesced to Bayliss by almost 24 years of silence and that any original error has been healed by the passage of time. See Phillip’s brief, at 25-28 (citing Hexcel Decatur, Inc. v. Vickers, 908 So.2d 237 (Ala.2005)). For the reasons stated herein, we find Hexcel inapplicable.
The argument for ratification by silence, though logically dubious,[4] ultimately fails because of its unconstitutionality. The assertion that the legislature has adopted a judicial interpretation by failing explicitly to reject it creates a method of amending a statute the Alabama Constitution does not permit. In Alabama, legislation cannot originate with the judiciary. “[T]he judicial shall never exercise the legislative ... powers.... ” Ala. Const. 1901, art. Ill, § 43. Instead, “[t]he legislative power shall be vested in a legislature, which shall consist of a senate and a house of representatives.” Id., art. IV, § 44. “No law shall be passed except by bill....” Id., art. IV, § 61. And no bill shall become a law unless first referred to and acted upon by a standing committee of each house. Id., art. IV, § 62. Additionally, no bill shall become a law unless approved by a recorded majority vote in each house. Id., art. IV, § 63. Adoption of amendments also requires a recorded majority vote. Id., art. IV, § 64. Finally, “[e]very bill which shall have passed both houses of the legislature ... shall be presented to the governor” for signature. Id., art. V, § 125.
Courts do not make law. No law can be enacted or amended apart from the constitutionally mandated procedure, known as bicameralism and presentment. See INS v. Chadha, 462 U.S. 919, 952, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) (noting *70 the “bicameralism and presentment requirements of Art. I” of the United States Constitution). Nowhere in the Alabama Constitution is provision made for the judiciary to initiate legislation that then automatically becomes law when not affirmatively vetoed by the legislature within a prescribed period. This presumed lawmaking authority of the judiciary has some resemblance to the provision for a bill to become a law by gubernatorial silence.[5] But obviously the judiciary has no power to translate itself into the shoes of the legislature and then further to clothe the legislature with a veto authority over its unauthorized enactments.
Any act of the legislature that does not follow the procedures required by the Constitution is, “as a law, wholly void, a mere nullity, and imposes no legal obligation on any body.” Moody v. State, 48 Ala. 115, 121 (1872). Accordingly, the legislature cannot acquiesce to a lawmaking process devised by the judiciary ex cathe-dra that has no authorization in the Constitution. “[T]he power to legislate rests exclusively with the legislature ... [which] cannot delegate that power.” Opinion of the Justices No. 145, 263 Ala. 158, 155, 81 So.2d 697, 698-99 (1955). The Court quoted with approval the following principle set out by Thomas M. Cooley:
“ ‘One of the settled maxims in constitutional law is, that the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority. Where the sovereign power of the State has located the authority, there it must remain; and by the constitutional agency alone the laws must be made until the constitution itself is changed. The power to whose judgment, wisdom, and patriotism this high prerogative has been intrusted cannot relieve itself of the responsibility by choosing other agencies upon which the power shall be devolved, nor can it substitute the judgment, wisdom, and patriotism of any other body for those to which alone the people have seen fit to confide this sovereign trust.’ ”
263 Ala. at 155-56, 81 So.2d at 699 (quoting 1 Cooley’s Constitutional Limitations, p. 224 (emphasis added)).[6]
“It is emphatically the province and duty of the judicial department to say what the law is.” Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). It is equally emphatically not the province of the judicial department to declare the law and then to assume that declaration automatically becomes a legislative pronouncement in the face of ensuing legislative silence. The alchemy of the acquiescence doctrine has no power to transmute the base metal of an unwarranted judicial construction into the pure gold of legislative enactment. “The verdict of quiescent years cannot be invoked to baptize a statutory gloss that is otherwise impermissible.” Zuber v. Allen, 396 U.S. *71 168, 185-86 n. 21, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969). See also Patterson v. McLean Credit Union, 491 U.S. 164, 175 n. 1, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (“It is ‘impossible to assert with any degree of assurance that congressional failure to act represents’ affirmative congressional approval of the Court’s statutory interpretation.” (quoting Johnson v. Transportation Agency, Santa Clara Cnty., 480 U.S. 616, 671-72, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987) (Scalia, J., dissenting))); Girouard v. United States, 328 U.S. 61, 70, 66 S.Ct. 826, 90 L.Ed. 1084 (1946) (declining to “place on the shoulders of Congress the burden of the Court’s own error”). The mere passage of time, therefore, has not diminished the power of this Court to reconsider Bayliss.
In Bayliss, this Court rejected its longstanding construction of § 30-3-1 that “children of the marriage” referred to minors only. See supra § III. If we are now to apply the acquiescence doctrine to preserve Bayliss, then the Bayliss Court should also have applied the doctrine to preserve the multiple cases construing § 30-3-1 that it overturned. If 24 years of silence since 1989 are construed to impress upon Bayliss a legislative imprimatur, what shall we say of the 137 years before Bayliss in which the legislature never spoke in opposition to this Court’s then prevailing interpretation of “children” as minors? Invoking the acquiescence doctrine to prevent this Court from correcting its errors in Bayliss is self-contradictory.

VI. Prospective Application

“The determination of the retroactive or prospective application of a decision overruling a prior decision is a matter of judicial discretion that must be exercised on a case-by-case basis.” Ex parte Coker, 575 So.2d 43, 51 (Ala.1990). Because many litigants have relied upon the holding in Bayliss to sue for and to collect support from noncustodial parents for college expenses, our decision in the instant case will not disturb final postmi-nority-educational-support orders entered before the date of this decision. “[W]here parties have acted upon the law as clearly declared by judicial decision, they will be protected, although such decisions are thereafter overruled.” Cooper v. Hawkins, 234 Ala. 636, 638, 176 So. 329, 331 (1937). See also Ex parte Capstone, 96 So.3d at 91 (“ ‘A decision overruling a judicial precedent may be limited to prospective application where required by equity or in the interest of justice.’ ” (quoting 20 Am.Jur.2d Courts § 151 (2005))); Jackson v. Fillmore, 367 So.2d 948, 950 (Ala.1979) (“When a rule established by judicial decision has existed long enough to be relied upon by those acquiring rights to, or title in, certain property, courts should be loath to destroy such rights when overruling prior decisions.”); and City of Birmingham v. Brasher, 359 So.2d 1153, 1155 (Ala.1978) (“ ‘[A] court of final decision may expressly define and declare the effect of a decision overruling a former decision, as to whether or not it shall be retroactive, or operate prospectively only, and may, by a saving clause in the overruling decision, preserve all rights accrued under the previous decision.’ ” (quoting 21 C.J.S. Courts § 194(a))). This principle has a long lineage. See Farrior v. New England Mortg. Sec. Co., 92 Ala. 176, 182, 9 So. 532, 534 (1891) (“[Subsequent decisions can not retroact so as to impair rights acquired in good faith under a statute as construed by the former decisions.”); Bibb v. Bibb, 79 Ala. 437, 444 (1885) (noting that considerations of stare decisis “call for permanently upholding acts done ... on the faith of decisions of the court of last resort”).
*72 Although today’s decision does not affect final orders of postminority educational support already entered, our overruling of Bayliss is applicable to all future cases. Further, this decision also applies to current cases where no final postminority-support order has been entered or where an appeal from a postminority-sup-port order is still pending. In this case Caroline may recover from Phillip postminority-support payments she has made under the trial court’s order of January 18, 2012.[7] Phillip was on notice that Caroline was challenging the trial court’s authority to order her to pay postminority educational support. Additionally, allowing Caroline to benefit from her success in this case provides “ ‘an incentive for litigants to challenge existing rules of law that are in need of reform,’ ” Hosea O. Weaver & Sons, Inc. v. Towner, 668 So.2d 892, 899 (Ala.1995) (quoting Prospective Application of Judicial Decisions, 33 Ala. L. Rev. 463, 473 (1982)), and observes the “case or controversy” requirement that a court’s holding affect the parties before the court. See James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 547, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (Blackmun, J., concurring in the judgment) (“[T]his Court’s function in articulating new rules of decision must comport with its duty to decide only ‘Cases’ and ‘Controversies.’ ”).

VII. Conclusion

The Bayliss Court failed to recognize the ordinary and common-law definitions of “child” as a minor, did not defer to the legislature’s designation of the age of majority, and failed to observe the canon of construction that courts cannot supply what a statute omits. Accordingly, we expressly overrule Bayliss. Because the child-custody statute does not authorize a court in a divorce action to require a noncustodial parent to pay educational support for children over the age of 19, we reverse the judgment of the Court of Civil Appeals and remand the cause to that court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PARKER and WISE, JJ., concur.
MOORE, C.J., and STUART and BOLIN, JJ., concur specially.
MAIN, J., concurs in the result.
MURDOCK and SHAW, JJ., dissent.
BRYAN, J., recuses himself.*

. Because we reverse the judgment on grounds of statutory interpretation, we do not reach the constitutional issues. See Moses v. Tarwater, 257 Ala. 361, 362, 58 So.2d 757, 757-58 (1952) ("[T]he constitutionality of a law will not be considered on appeal unless essential to the decision of the actual case before the court.”).

. Reading the phrase "children of the marriage” in § 30-3-1 as not limited to minor children would produce the absurd and unjust result that a court could assign custody of the adult children of a marriage to one of the divorcing parties, thus stripping the children of their adult status and reducing them to the status of minors subject by law to the direction and control of their parents. See 3A Sutherland § 69:9 ("Courts avoid any construction of statutory language which leads to an absurd result.”).

. “Any person in this state, at the arrival at the age of 19 years, shall be relieved of his or her disabilities of minority and thereafter shall have the same legal rights and abilities as persons over 21 years of age.” § 26-l-l(a), Ala.Code 1975.

. The legislature, of course, is free to amend a statute to incorporate a judicial construction. But its failure to do so does not mean it has so acted and does not prohibit the Court from correcting its own error. See Helvering v. Hallock, 309 U.S. at 121 (“This court ... has from the beginning rejected a doctrine of disability at self-correction.”). In short, legislative inaction does not estop this Court from reconsidering its own errors. "To explain the cause of nonaction by Congress when Congress itself sheds no light is to venture into speculative unrealities.... [W]e walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle.” Id. at 119-21.

. "If any bill shall not be returned by the governor within six days, Sunday excepted, after it shall have been presented, the same shall become a law in like manner as if he had signed it_” Ala. Const. 1901, art. V, § 125.

. The federal principle is the same. "Congress may legislate ... only through the passage of a bill which is approved by both Houses and signed by the President. See U.S. Const., Art. I, § 7, cl. 2. Congressional inaction cannot amend a duly enacted statute.” Patterson v. McLean Credit Union, 491 U.S. 164, 175 n. 1, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). See Daniel L. Roten-berg, Congressional Silence in the Supreme Court, 47 U. Miami L. Rev. 375, 378 (1992) (noting that "Congress cannot make laws by inaction, for inaction does not conform with constitutional lawmaking requirements”).

. "Quasi-prospective overruling ... protects reliance on prior rules by applying the overruling decision to acts done or transactions consummated after the effective date of the decision. Unlike prospective overruling, however, when a court overrules quasi-prospectively, it affords relief to the instant parties.” Hosea O. Weaver & Sons, Inc. v. Towner, 663 So.2d 892, 899 (Ala.1995) (quoting Prospective Application of Judicial Decisions, 33 Ala. Law. Rev. 463, 473 (1982)).