Paul B. McCRIMON

v.

Marion E. McCRIMON.

2140893.

Court of Civil Appeals of Alabama.

April 22, 2016.

Jonathan Ashley Spann of Morrison & Spann, LLC, Columbiana, for appellant.

J. Frank Head of Ellis, Head, Owens & Justice, Columbiana, for appellee.

THOMPSON, Presiding Judge.

Paul B. McCrimon ("the husband") appeals from a judgment of the Shelby Circuit Court ("the trial court") divorcing him from Marion E. McCrimon ("the wife").[1] In the judgment, entered on February 22, 2015, the trial court divided the parties' marital assets and ordered the husband to reimburse the wife for certain expenditures. The husband was also ordered to pay child support, including a portion of the parties' minor child's college expenses, until the child reached the age of 19 in April 2015.

The record indicates the following. The parties were living together when their only child ("the child") was born in 1996. They lived apart and moved back in together a number of times. During one of the times they lived apart, the husband married another woman, but that marriage was apparently brief. In December 2003, the parties married each other. Even after the marriage, however, the parties continued their pattern of separating and reconciling. The wife testified that she learned that, during the parties' marriage, the husband had purchased the vehicle that his previous wife was driving. The husband testified that he did not purchase the vehicle, a 2006 Pontiac Grand Prix, for his previous wife, and he denied that she ever drove the vehicle. When shown certain bank statements, the husband acknowledged that his previous wife was making payments on the Grand Prix, explaining that she owed him money "from way back."

On September 13, 2012, the husband and the wife had an argument that led to their permanent separation. The wife testified that they had been arguing in the days leading up to September 13, when the husband accused the wife of putting water in the gas tank of his truck. The wife denied doing so. The wife testified that the husband told her he was going to retrieve a shotgun from his father's house next door "to make sure you leave here." The wife said that she was preparing for work at the time and that, as she left the marital residence, the husband was standing outside with a shotgun, which he fired. The wife said that she heard the shotgun pellets hitting the cement around her. As she left the house in a vehicle, the wife said, the husband shot again and hit the back end of the vehicle. She said that the husband fired the shotgun several times.

The husband testified that, when the wife did not leave the house when he told her to, he went to his father's house and retrieved the shotgun. He said that his intention was not to kill the wife but to make her leave the marital residence. He said that he shot into the air from about 50 to 100 yards away from the wife. The husband denied that he fired the gun more than once or that he aimed it toward the vehicle the wife was driving. However, the child testified that she was leaving the house in a vehicle just ahead of the wife. She said that, from her sideview mirror, she saw the husband fire the shotgun toward the wife's vehicle. The child also said that the husband fired the gun several times from a distance close enough to hit the wife's vehicle. The child said that there were pellet marks on the wife's vehicle.

The wife testified that she had not been to the marital residence since the Septem-

---

1. In his notice of appeal, the husband indicated that he was also appealing from a protection-from-abuse order entered in case no. CV–12–533. However, based on the parties' briefs, it is clear that the judgment divorcing the parties, entered in case no. DR–12–900640, is the only judgment at issue in this appeal. We have amended the style of the appeal accordingly.

ber 13, 2012, incident. She said that members of the husband's family brought her clothing to her. The wife asked the child to bring her purses to her, but, she said, when the child retrieved them, they were stained from having been placed in the trash. Other items belonging to the wife also had been placed in the trash, including her class ring. The wife was able to retrieve a jewelry box from the marital residence. Since September 13, 2012, the wife said, she has been living with her mother. The husband has remained in the marital residence. The child lived with the wife until leaving for college in August 2014. The child testified that she visits with the husband but has never stayed with him overnight.

Before the parties married, the wife owned her own house. After they married, the parties lived in the wife's house and she continued to make the mortgage payments on that house. In the mid–2000s, at a time when the parties were separated, the wife's house burned. The husband was at that time living in a mobile home that he had purchased. The wife testified that the house and its contents were a total loss, and in December 2006 she received insurance proceeds for the loss in the amount of $109,769.14. The wife used $30,000 of the insurance proceeds as a down payment on the marital residence. In addition, the wife said, money from the insurance proceeds was used to buy most of the furnishings for the marital residence. She also gave the husband $15,000 with which he paid off the indebtedness on his truck, among other things. An additional $20,000 was placed in the parties' joint bank account. The wife testified that the husband moved the $20,000 into his individual account without telling her.

The husband testified that he moved the money into his own account, where he also deposited his income, because, he said, the wife spent $1,200 without telling him. When asked what he did with the money in his individual account, the husband testified that he spent it on things like car insurance and family vacations. He said that, in the past, he would give the wife money from the account at Christmas, he would withdraw $1,000 at a time, or he would use money from the account "to catch up some of the bills." He said that he also moved $7,000 from the joint account into his "personal account" and used $5,000 of the $7,000 to make the down payment on the automobile he intended the child to drive. At the time of the hearing, however, the husband had sold that automobile. When the parties separated in September 2012, the husband's individual account contained $10,065.09.

The husband testified that he used his money to purchase the property where the marital residence was located. The property had been part of his family's farm. The husband also testified that he had made all of the mortgage payments on the marital residence since 2008. The parties differed on their estimates as to the value of the marital residence. The parties paid $194,000 for the marital residence, and an appraisal of the marital residence conducted during the course of the divorce action estimated the market value of the house at the time of the trial to be $185,000. The wife testified that she believed the market value of the house was between $185,000 and $194,000 and that the remaining debt on the mortgage was approximately $131,000. On the other hand, the husband presented evidence indicating that the tax assessor's value of the marital residence was $157,000, and he testified that, in his opinion, that amount was the market value of the marital residence. The husband testified that, at the time of trial, $129,000 was owed on the marital residence.

At the time of the trial, the wife worked full time as a school nurse at Shelby County High School. She also held a part-time job at a retirement community. Before beginning her employment at the high school, the wife had worked at Trinity Medical Center ("TMC") earning approximately $38,000 annually. She said that, because she was a licensed practical nurse ("LPN") and not a registered nurse ("RN"), she had to leave that position when the facility decided to use only RNs. The wife said that she did not earn as much in her current positions as she had with TMC. The husband testified that his income in 2008 was $32,791. The evidence was undisputed that the husband has a full-time job and that he has worked for the same employer for a number of years. However, there is no evidence in the record indicating the type of work the husband performs. It appears from comments made at the outset of the trial that each party had submitted Form CS–41 "Child–Support–Obligation Income Statement/Affidavit," but this court has searched the record, including the trial exhibits, and those forms are not contained in the record on appeal.

On February 22, 2015, the trial court entered its judgment divorcing the parties. In the judgment, the trial court awarded the marital residence to the husband but awarded the wife $40,000 for her interest in the equity in the house. The parties' personal property and vehicles were divided in accordance with a list the wife had submitted to the trial court. The list included a division of furniture, household items, televisions, and various collectibles. The wife received a 2007 GMC Envoy sport-utility vehicle. The husband received a 2003 Southern Comfort GMC Sierra pickup truck, a 1995 Ford Explorer sport-utility vehicle, and "use" of a Toyota pickup truck. The judgment, which was based on the wife's list, also purported to award the husband the mobile home he had purchased during an earlier separation from the wife; however that mobile home had been sold in 2012 for $21,000. Pursuant to the list, each party was also awarded his or her retirement account.

As to child support, the trial court ordered the husband to pay $574 a month, the same amount he was paying pursuant to a pendente lite support order, for the two months the child would remain a minor. The trial court also ordered the husband to pay the wife $3,668 for his share of the child's college expenses while she was a minor. That award is discussed more fully later in this opinion.

In addition to dividing the parties' marital property and awarding child support, the trial court ordered the husband to make a number of specific payments to the wife to reimburse her for certain things, such as two months' worth of unpaid pendente lite child-support payments; half the medical expenses the child had incurred that were not covered by health insurance, as required by the pendente lite order; the cost to repair the damage done to the wife's car in the September 2012 shooting incident; half the insurance proceeds paid to the parties as a result of damage caused by a lightning strike to the marital residence shortly before the parties separated; half the cost of the appraisal of the marital residence; and half the amount remaining in the husband's personal checking account.

Neither party was awarded alimony. A provision in the divorce judgment awarded the wife "an attorney's fee in the amount of $_____ for which the [husband] shall be responsible for payment." We note that the failure to indicate the specific amount of the attorney-fee award does not necessarily affect the finality of the judgment, *see Pediatrics by the Bay v. EMD*

*Solutions, Inc.,* 81 So.3d 381, 383 (Ala.Civ. App.2011), and we address the attorney-fee award later in this opinion.

■ On March 24, 2015, the husband filed a motion to alter, amend, or vacate the judgment, which was denied by operation of law on June 22, 2015.[2] The husband then filed a timely notice of appeal.

■ The husband contends that the trial court's division of the marital property, which was based on the list the wife had submitted, was inequitable.

> " 'When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. *Roberts v. Roberts,* 802 So.2d 230, 235 (Ala.Civ.App.2001); *Parrish v. Parrish,* 617 So.2d 1036, 1038 (Ala. Civ.App.1993); and *Hall v. Mazzone,* 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. *Parrish,* 617 So.2d at 1038.'
>
> "*Stone v. Stone,* 26 So.3d 1232, 1236 (Ala.Civ.App.2009).
>
> " 'The issues of property division and alimony are interrelated, and they must be considered together. *Albertson v. Albertson,* 678 So.2d 118 (Ala. Civ.App.199[5] ). A property division is not required to be equal, but it must be equitable. *Golden v. Golden,* 681 So.2d 605 (Ala.Civ.App.1996). In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages and health; the length of the parties' marriage; and the source, value, and type of marital property. *Robinson v. Robinson,* [795 So.2d 729 (Ala.Civ.App.2001) ]; *Lutz v. Lutz,* 485 So.2d 1174 (Ala.Civ.App. 1986). In addition, the trial court may also consider the conduct of the parties with regard to the breakdown of the marriage.... *Ex parte Drummond,* 785 So.2d 358 (Ala.2000); *Myrick v. Myrick,* 714 So.2d 311 (Ala.Civ. App.1998); *Lutz v. Lutz,* supra.'
>
> "*Pate v. Pate,* 849 So.2d 972, 976 (Ala. Civ.App.2002)."

*Spuhl v. Spuhl,* 120 So.3d 1071, 1074–75 (Ala.Civ.App.2013).

In contending that the division of marital property was inequitable, the husband claims that the wife's earning capacity and future prospects are greater than his, and, he says, the judgment does not reflect that. The husband did not provide a citation to the record to support that contention. The wife is an LPN, but there is no evidence in the record on appeal indicating the type of work the husband does or what job prospects are available to him. The evidence indicated that the wife earned $38,000 annually while employed by TMC but that she earns less than that amount as the school nurse at Shelby County High School. The evidence also indicated that the wife works at a second job to earn additional income. The only evidence regarding the husband's income indicated that he earned $32,791 annually. From the evidence, it appears that neither party

---

**2.** The trial court purported to enter an order on June 24, 2015, denying the husband's post-judgment motion. However, the trial court no longer had jurisdiction over the matter, and the June 24, 2015, order is, therefore, void. *Green v. Georgia–Pacific Corp.,* 906 So.2d 961, 962–63 (Ala.Civ.App.2005).

has an advantage over the other in terms of earning potential.

Additionally, the husband asserts that the trial court's judgment "is not indicative of the trial court considering the parties' earning capacities, the parties' future prospects, or the source, value, and type of marital property of the parties' in its property division." In his brief on appeal, he also claims that the trial court treated the insurance proceeds the wife received as a result of the loss of her former home as her separate estate, and that the wife was awarded more than 105% of the value of the parties' marital residence. The record does not support the husband's argument.

In its judgment, the trial court explicitly stated that, although the wife owned her previous house individually, she "spent all of [the insurance proceeds she received as a result of the fire that destroyed the house and its contents] as a part of the marriage." The trial court then found that the fair market value of the marital residence was $185,000 and that the mortgage indebtedness was $130,000, for "approximately $55,000 of equity."[3] In awarding the wife $40,000 as her share of the equity in the marital residence, the trial court explained that it was awarding the wife

> "an interest of $30,000 she paid for construction of the house from the $109,765.14 that was otherwise spent during the marriage following receipt of the fire insurance proceeds; the [husband] is entitled to an off-set of $5,000 for the value of the land provided by his family, and the [wife] is awarded an additional $10,000 interest, being one-half (½) of the remaining equity therein."

The husband was then awarded sole possession of the marital residence, and the wife was ordered to convey her interest in the residence and surrounding land to the husband upon his payment to the wife of the $40,000.

The evidence supports the trial court's valuation of the marital residence and the other figures it relied on in calculating the division of the equity in the marital residence. The trial court's judgment indicates that it awarded each party the portion of the money he or she had each put toward the down payment of the property and the construction of the marital residence, then equally divided the remaining equity. The house and surrounding property itself was awarded to the husband. The evidence is undisputed that the husband forced the wife to leave the marital residence at gunpoint and had thrown away some of her personal belongings. The husband had enjoyed sole possession of the marital residence and all of its contents from September 2012 through February 2015, when the divorce judgment was entered. Based on the record before us, we cannot say that the trial court abused its discretion in dividing the equity in the marital residence.

■ As to the division of the parties' personal property, the husband complains that the wife was awarded "every item of personal property she requested," most of which the husband did not include in the list of 11 items he requested in his submission to the trial court. The husband was awarded some items on that list, including the den furniture and the guest-bedroom suite. Of the disputed items, the wife was awarded two televisions, including the big-screen television, and the husband was awarded three televisions. The husband also received personal property he had not included in his list, including two pickup

---

**3.** We note that 105% of the value of the marital residence as determined by the trial court would be $194,500.

trucks and a sport-utility vehicle, the mobile home he had purchased and sold in 2012 for $21,000, and his retirement account. The wife received one sport-utility vehicle. She also received her retirement account. The money that was in the husband's individual bank account, into which he had transferred money from the parties' joint account without the wife's knowledge, was divided equally between the husband and the wife. Neither party testified as to the value of the personal property; thus, there is no evidence from which this court can determine whether the monetary value of the division of that property was equitable. Moreover, it must be noted that the husband was awarded the parties' largest single marital asset, i.e., the marital residence. Based on our review of the record, the lists of items of personal property each party requested, and the way those items and others were distributed between the parties, we cannot conclude that the trial court's division of the personal property was inequitable and, thus, requires reversal.

 Although not entirely clear from his appellate brief, the husband also appears to include in his assessment of the value of the assets awarded to the wife the various monetary awards the trial court ordered him to pay the wife to reimburse her for things such as the damage done to the vehicle the wife was driving that was hit by shotgun pellets, half the proceeds from an insurance check received for damage done when the marital residence was struck by lightning and to which the husband admitted forging the wife's signature, past-due pendente lite support, and half the cost of the appraisal of the marital residence. The trial court also awarded the wife the additional amount she had to pay in income taxes for tax year 2012—the year the wife and the child moved from the marital residence—because the husband

claimed the child as a dependent even though the wife had custody of the child and had asked the husband not to claim the child as a dependent. We note that those items constituted reimbursements for amounts the husband should have paid the wife and were not assets subject to division. Also, to the extent the husband is challenging those awards on appeal, his challenge does not include a developed legal argument and is not supported by legal authority.

> " 'When an appellant fails to properly argue an issue, that issue is waived and will not be considered. *Boshell v. Keith*, 418 So.2d 89 (Ala.1982).' *Asam v. Devereaux*, 686 So.2d 1222, 1224 (Ala.Civ. App.1996). 'An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless *presented and argued* in brief. *Ex parte Riley*, 464 So.2d 92 (Ala.1985).' *Braxton v. Stewart*, 539 So.2d 284, 286 (Ala.Civ. App.1988)."

*Tucker v. Cullman–Jefferson Ctys. Gas Dist.*, 864 So.2d 317, 319 (Ala.2003). *See also White Sands Grp., L.L.C. v. PRS II, LLC,* 998 So.2d 1042, 1058 (Ala.2008) ("Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived."). Accordingly, we will not hold the trial court in error for making any of those specific monetary awards.

The husband also appears to argue that the trial court erred in accepting the proposed judgment of divorce the wife submitted instead of the proposed judgment he submitted because, he says, the wife's proposed judgment resulted in what he says was an inequitable property division. We have already determined that the husband has failed to demonstrate that the division

of marital property was inequitable. Moreover, the husband has cited no authority that would indicate that a trial court cannot accept a proposed judgment drafted by one of the parties. Thus, the husband has failed to demonstrate error as to this issue. *See White Sands,* supra.

■ The husband next argues that the trial court erred in awarding the wife an attorney fee. The provision in the judgment purporting to award the wife an attorney fee left the amount of the award blank. In his motion to alter, amend, or vacate, the husband did not challenge what he now says was an award of an attorney fee to the wife. Furthermore, in her brief on appeal the wife states that she was not awarded an attorney fee in this case. We note that, under the doctrine of judicial estoppel, the wife cannot later take a position that is contrary to the position she asserts in this appeal. *See, e.g., White Tiger Graphics, Inc. v. Clemons,* 88 So.3d 908, 911 (Ala.Civ.App.2012); *Edwards v. McCord,* 461 So.2d 1319, 1320 (Ala. 1984)(" 'It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, *and succeeds in maintaining that position,* he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.' " (quoting *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895))). Admittedly, the better practice would have been for the trial court to exclude altogether the provision regarding an award of an attorney fee from the judgment or to enter a zero as the amount of the fee to be awarded. However, by leaving blank the amount of an attorney fee to the wife, it appears the trial court did not intend to award the wife such a fee. Thus, this issue is without merit.

■ Finally, the husband argues that the trial court abused its discretion in ordering him to pay a portion of the child's college costs while the child was still a minor. He contends that such an order results in an undue hardship to him and is manifestly unjust.

In its judgment, the trial court noted that a pendente lite order entered on February 25, 2013, had directed the husband to pay the wife child support of $574 each month. At the time the divorce judgment was entered on February 22, 2015, the child would be a minor for only two more months. The trial court found that the child had been a full-time student at Auburn University since August 2014. After noting that the wife was no longer able to seek postminority educational support for the child, pursuant to *Ex parte Christopher,* 145 So.3d 60 (Ala.2013), the trial court wrote:

"The [wife] is nonetheless entitled to seek a deviation from the Child Support Guidelines for payment of support during minority for reasonable and appropriate expenses incurred which are in the best interest of said child. *See* Rule 32(A)(1)(c), A[la]. R. Civ. P.

"Evidence was presented that tuition, room and board, books, fees and other necessary and appropriate expenses, e.g., lap top computer, clothes, food, personal care products, etc., were paid by the [wife] for the Fall term in the amount of $8,119.16. In order to pay said amount, the [wife] withdrew a part of her Valic retirement in the amount of $7,500. Evidence was presented that the [wife] has paid, or is paying, tuition, room and board, books and fees for the Spring semester at Auburn in the amount of $7,253.

"The Court finds that the [husband] should make a contribution toward payment of the minor child's college ex-

penses during her minority. The evidence presented as to the cost of Fall and Spring terms at Auburn University is $15,372.16 ($8,119.16 plus $7,253). The [husband] should be responsible for payment of one-half (½) thereof, or $7,686. The [husband] is entitled to a credit, however, for seven (7) months of child support that he has paid while the child has been in college in the amount of $4,018. The balance owed is $3,668. The [husband] is hereby ordered to make payments to the [wife] in the current child support amount of $574 per month until said sum is paid. In other words, the [husband] may pay the [wife] $574 each month over the next six (6) months, and make a final payment in the amount of $224 in the seventh (7th) month, in order to satisfy his child support obligations."

The husband argues that the trial court erred by not applying *Ex parte Christopher*, which, as the trial court stated in its judgment, precluded the wife from seeking postminority educational support for the child. The husband contends that, pursuant to *Ex parte Christopher*, he could not be required to make payments toward the child's educational support after the child reached the age of 19.

Rule 32(A)(1)(c), Ala. R. Jud. Admin., specifically provides that a trial court can deviate from the child-support guidelines to require payment of "[e]xpenses of college education *incurred* prior to a child's reaching the age of majority." (Emphasis added.) The record indicates that the wife presented receipts and other documentary evidence to support the total amount she had spent for the child's first year of college. At the time of the trial (and at the time the judgment was entered), the child had not yet reached the age of majority; therefore, there can be no question that all of the expenses for which the wife sought reimbursement were incurred before the child reached the age of 19. The trial court did not order the husband to pay any postminority educational support for the child that would be prohibited by the holding in *Ex parte Christopher*. Thus, the judgment complies with *Ex parte Christopher*, and the husband's assertion to the contrary is without merit.

The husband asserts on appeal that he did not have the financial ability to make the payments the trial court ordered and that the trial court failed to take into account the financial conditions of the parties. Specifically, the husband contends that, in ordering him to pay a portion of the child's college expenses, the trial court failed to consider the factors set forth in *Penney v. Penney*, 785 So.2d 376, 378–79 (Ala.Civ.App.2000), for determining whether to grant or to deny a petition for postminority educational support. The husband's reliance on *Penney* is misplaced. As the trial court pointed out in its judgment and as previously discussed, the husband was not ordered to pay postminority educational support. Instead, the trial court noted that it was deviating from the child-support guidelines to require the husband to contribute to the child's college expenses incurred during her minority. In the judgment, the trial court explained that it divided the child's college expenses evenly between the husband and the wife, whose annual incomes were comparable. The trial court also gave the husband credit for the child-support payments he had made while the child was attending college. The balance of the husband's contribution to the child's college expenses during her minority was $3,668. Rather than require the husband to reimburse the wife in a lump-sum payment, the trial court allowed the husband to spread that payment over seven months by continuing to pay the wife $574 each month—an amount that the husband had said was reasonable and ac-

ceptable as a monthly child-support obligation. Accordingly, we cannot say that the trial court erred in deviating from the child-support guidelines in requiring the husband to contribute to the college expenses the child incurred while still a minor.

The husband has failed to demonstrate that the trial court erred in dividing the marital property or in ordering him to reimburse the wife for certain expenses, including the child's college expenses. Therefore, the judgment of the trial court is affirmed.

AFFIRMED.

PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur.