MOORE, Judge.
Julia Yi Seymour ("the former wife") appeals from a judgment of the Madison Circuit Court ("the trial court") addressing her petition for contempt and for modification of certain provisions of the trial court's February 27, 2009, judgment divorcing her from James Allen Seymour, Jr. ("the former husband"). We affirm the judgment.
Procedural History
As previously stated, the parties were divorced by a judgment of the trial court entered on February 27, 2009; that judgment incorporated an agreement entered into by the parties and awarded the parties joint legal custody of their five children, who were minors at the time, with the former husband being awarded sole physical custody and the former wife being awarded certain specified visitation. The parties' agreement provided, among other things, that the former wife was not required to pay child support to the former husband as a result of several specified relevant factors. The former husband was directed to execute all documents necessary for the former wife to recover 42.5% of his military-retirement benefits; he also agreed "to sign paperwork allowing the [former] wife to collect the survivor benefit" of his military-retirement benefits. With regard to alimony, the former husband was ordered to pay the former wife rehabilitative alimony for 60 months, with the sum of the 42.5% of the former husband's military-retirement benefits and the rehabilitative-alimony award to total $3,000 per month; the judgment also stated that "the [former] husband shall give the [former] wife two hundred dollars per week for the children to spend with the [former] wife" ("the children's money"). The agreement *736 specifically reserved the issue of periodic alimony.
On June 24, 2014, the former wife filed a "petition to modify alimony and custody and for rule nisi." She asserted, among other things, that the former husband had failed to comply with certain aspects of the divorce judgment. The former wife sought to have the former husband held in contempt for his failure to comply with those provisions of the divorce judgment; she also sought an award of periodic alimony, a modification of the custody of the one child of the parties who was still a minor, and an award of attorney's fees. The former husband filed an answer to the former wife's petition on July 21, 2014. A trial was conducted on July 6, 2015. On August 4, 2015, the trial court entered an order indicating that the parties had presented contradictory evidence regarding the payments made by the former husband to the former wife with regard to rehabilitative alimony and the children's money and that it was "in need of clarification from the parties." The trial court "reopen[ed] the evidence," set the matter for a hearing, and requested that the parties present additional evidence. Following the clarification hearing on January 15, 2016, the trial court entered a final judgment on May 18, 2016, awarding the former wife the amount of $22,996.44 with regard to the former husband's arrearages of rehabilitative alimony and the children's money and denying all other requested relief. The former wife filed a postjudgment motion on June 14, 2016. On June 17, 2016, the former husband filed a postjudgment motion. A hearing on those motions was conducted on July 13, 2016; however, the trial court failed to enter an order adjudicating either party's postjudgment motion. The former wife filed her notice of appeal to this court on August 12, 2016; the appeal was held in abeyance pending the disposition of the postjudgment motions.[1] See Rule 4(a)(5), Ala. R. App. P.
Standard of Review
" 'In a case in which the evidence is presented to the trial court ore tenus, such as this one, the findings of the trial court are presumed correct and will not be set aside unless they are plainly and palpably wrong or unjust.' Tibbs v. Anderson, 580 So.2d 1337, 1339 (Ala. 1991). 'Furthermore, where the trial court does not make findings of fact, it will be assumed that the trial court made those findings that were necessary to support its judgment, unless the findings would be clearly erroneous.' Ex parte Walters, 580 So.2d 1352, 1354 (Ala. 1991)."
Brown v. Brown, 26 So.3d 1210, 1213-14 (Ala. Civ. App. 2007).
Facts
The former wife testified that she first came to the United States in 1987, that she had completed high school in Germany before moving to the United States, and that English is not her first language. She stated that she and the former husband had been married for 22 years at the time they divorced. According to the former wife, the former husband was in the military when they married, had retired from the military in 2006 and had begun working in the private sector, and had earned more each year since leaving the military. The former wife testified that the most she had earned during the parties' marriage was $13 per hour working temporary or seasonal jobs. She stated, however, that, at the time of the divorce, she had been working as the general manager of a *737 smoothie café and that she had had an ownership interest in that business. The former wife testified that she had given up her interest in and had closed that business because, she said, she had been unable to operate the business during the parties' divorce proceedings. She stated that she had worked at a hospital for three months after she had left the smoothie café, but, she said, that employment had been only temporary. The former wife stated that she had applied to Drake Technical College ("Drake"), that she had been accepted, but that, because her high school in Germany could not find her transcript, Drake had asked her to complete their program for obtaining a general equivalency diploma before attending the college. She testified that she had attended that program to improve her English, but, she said, she had left the program because she was "burnt out" and depressed. She stated that she had taken many classes but that they were often not credited. According to the former wife, she had been unable to secure full-time employment since the divorce. She stated that she had begun a part-time job as an associate at Kay Jewelry the week before the trial and that she was in training at the time of the trial. The former wife testified that she was working 20 hours a week at Kay Jewelry, earning $8 an hour, for a gross income of $640 per month.[2] She stated that her training would continue another 60 to 90 days and that, following her training, she would begin to earn commissions on her sales. The former wife testified that she also receives an amount each month from the former husband's military-retirement benefits and that the amount she receives each month had increased to $1,107 in January 2015.
The former wife stated that, at the time of the parties' divorce, she had moved into the former husband's apartment, where he had paid the rent, and that, when that lease had expired, she had moved into the marital home with the former husband for approximately three months. She testified that she had moved out of the marital home in October 2009 when she purchased her own home. With regard to a vehicle, the former wife testified that the parties had agreed at the time of the divorce that she would use the former husband's van, which she had used during the parties' marriage. According to the former wife, she had continued driving the former husband's van until the former husband had asked her to return it, at which time, she said, she had purchased her own vehicle, a Toyota Corolla, in January 2010. The former wife testified that, beginning in 2009, the former husband had spoken to her about a decrease in his income and had told her that he wanted to pay her less than he was required to pay under the divorce judgment, but, she said, she had not agreed to any reduction in payments. She stated that, in other months, the former husband had indicated that he had earned less money and that he wanted to pay her less, but, she said, he had agreed to pay what he could afford at the time and to repay her the remaining amounts. The former wife testified that the former husband had repaid some of what he had owed her but that he had not repaid the full amount owed. The former wife testified that the former husband had also unilaterally reduced the amount of the children's money that he had paid her as each child had reached the age of 18. She stated that, at the time of the modification trial, *738 only one of the parties' children was still a minor.
According to the former wife, the former husband's failure to pay her the full financial obligations required by the divorce judgment had resulted in her losing her house and her vehicle, and, as a result, she said, her credit had been negatively affected. She testified that she had moved to Georgia for three months in 2011 after her house had been foreclosed upon because, she said, she had not had anywhere to live and she had been allowed to stay in a guest home at a chapel in Georgia. The former wife stated that she had been offered employment at a hotel/restaurant in Georgia but that she had returned to Alabama in June or July 2011 because the former husband had informed her that he was able to resume making his full rehabilitative-alimony payments. The former wife admitted that she had not sought employment after she returned from Georgia. She stated that she had taken courses to become certified as a chaplain and that she was performing services as a chaplain without pay.
The former wife testified that, after her Toyota Corolla automobile had been repossessed in 2010 or 2011, she had purchased another Toyota Corolla automobile, but, she said, she had given that automobile to her daughter and had purchased a 2012 Nissan Maxima automobile. She stated that the Maxima had had some problems, so, four months later, she had been fully refunded the money she had paid for that vehicle and had purchased a Toyota Yaris automobile. The former wife stated that her daughter had been driving the former wife's Toyota Yaris automobile when she was involved in a motor-vehicle accident that had totaled the automobile, so, she said, she had purchased a 2014 Toyota Prius automobile in 2014 for approximately $15,000. The former wife testified that the loan for the Toyota Prius is in her daughter's name and that she pays $300 to the daughter each month to make the payment on that loan. According to the former wife, she had also purchased land in 2012 for $15,000, and, she said, the title to that land is in her name but the loan with which the land was purchased is in her daughter's name because the former wife does not have good credit. The former wife stated that there is a mobile home on that property.
According to the former wife, she had been living with her daughter and her daughter's family in their house since 2011. She testified that six people live in that house, which has three bedrooms, and that she did not want to continue living with her daughter. The former wife submitted an exhibit outlining her proposed living expenses. Although she testified that she was paying her daughter approximately $400 per month in addition to $300 she pays her for the payments on the Toyota Prius, the former wife estimated that her monthly rent or mortgage payments would cost $950 and that she would have additional monthly expenses for telephone, electricity, gas, water, sewer, cable, waste removal, and maintenance. The former wife stated that she had based the amounts for those items on what she had paid at her house that had been foreclosed on. The former wife admitted that, at the time of the trial, she was paying $28 per month for health insurance because her income is so low, despite her having included $275 per month for insurance on the exhibit she submitted to the trial court.
With regard to the former wife's survivor benefit resulting from the former husband's military retirement, she testified that the former husband had told her that she could not receive that benefit because she had failed to file for it within a year of the parties' divorce judgment having been entered. She testified that she had not *739 known that her signature was required to perfect her receiving that benefit. (R. 75). The former husband testified that he had inquired and learned that the former wife was required to have filed paperwork within a year of the entry of the divorce judgment to have the survivor benefit permanently assigned to her. He admitted that he had not assisted the former wife in obtaining that benefit; he testified, however, that the former wife could file an appeal seeking to receive that benefit despite having missed the one-year deadline. He also testified that, at the time of the modification trial, the former wife was listed as the survivor beneficiary regarding his retirement benefits.
The former husband testified that, at the time of the modification trial, he was self-employed by his company, Mercury Group, LLC, and that he was also performing consulting work for his former employer. He stated that his annual salary at the time of the trial was $130,000. The former husband testified that he also receives military-retirement benefits of $2,200 per month but that the former wife receives $1,107 from that amount each month. He stated that he also receives veteran's disability benefits each month and that his total annual income is approximately $163,000. According to the former husband, his hours had been reduced in November and December 2010, and, he said, he had not paid the former wife the full amount of his monthly financial obligations under the divorce judgment in 2011. He testified, however, that anytime he had made a change in how much he paid the former wife, it had been after consulting with the former wife and upon her having agreed to the reductions in the amounts he paid her. The former husband testified that the former wife had also agreed with the reductions he had made with regard to the payments of the children's money. He stated that the parties' agreement had indicated that the children's money was for the minor children and that he had stopped making a portion of those payments as each child turned 18; he stated that he had not realized that, according to Alabama law, the age of majority is 19 years. The former husband also testified that he had stopped paying the former wife the children's money at the end of the 60-month rehabilitative-alimony period.
According to the former husband, he believed that he had made all the payments required by the divorce judgment. He admitted that the former wife had been dependent on his monthly payments to pay her bills. He also testified, however, that the former wife has the ingenuity and determination to obtain a business, that she lacks motivation and "the ability to do things right," but that she has the ability to make money and to pursue opportunities and does not do so by choice. The former husband asserted also that the former wife had lied about being unable to obtain her high-school transcripts from Germany. With regard to the provision of the divorce judgment requiring the former husband to provide the former wife with a vehicle, the former husband testified that the former wife had returned his van to him after she had purchased her first Toyota Corolla automobile because, he said, she had told him that she did not want to maintain the van because it used too much gas and because she had obtained her own vehicle.
Analysis
Periodic Alimony
The former wife first argues on appeal that the trial court erred in failing to award her periodic alimony. A trial court can award a former spouse periodic alimony after the expiration of a period of rehabilitative alimony when, as happened in this case, it has reserved jurisdiction to do so. See *740 Stanford v. Stanford, 34 So.3d 677, 680 (Ala. Civ. App. 2009). The reservation of jurisdiction empowers a trial court to consider whether a material change of circumstances has occurred since the last judgment addressing alimony, see Wilson v. Wilson, [Ms. 2150259, Oct. 21, 2016] --- So.3d ---- (Ala. Civ. App. 2016), and whether that change in circumstances warrants an equitable award of periodic alimony to assist the former spouse in maintaining the former marital standard of living. Stanford, supra. However, even if a party shows a material change of circumstances with regard to a periodic-alimony obligation, a trial court is not required to modify that alimony obligation. Santiago v. Santiago, 122 So.3d 1270, 1278-79 (Ala. Civ. App. 2013). "Alabama law is well settled that the modification of periodic alimony is a matter within the discretion of the trial court, and on appeal a trial court's judgment on that matter is presumed correct. Posey v. Posey, 634 So.2d 571, 572 (Ala. Civ. App. 1994)." Stanford, 34 So.3d at 681.
In her modification petition, the former wife asserted that, since the entry of the divorce judgment, she had developed disabling depression and that the former husband had failed to designate her as the survivor beneficiary of his military-retirement benefits, thereby requiring the former wife to save for her own retirement fund. The former wife testified that she has "some depression" and that it "somewhat" affects her ability to work. However, at the time of the trial, the former wife testified that she was employed as an associate at a jewelry store; that her training would continue another 60 to 90 days; that she was currently earning $8 per hour and working 20 hours a week for a gross income of $640 per month; and that, after she completed her training, she would begin to receive commissions from her sales. In comparison, at the time of the entry of the divorce judgment, the former wife was working at a smoothie café and, according to her testimony at trial, earning no income despite her ownership interest in that business. From that evidence, the trial court could have determined that any depression from which the former wife suffers had not prevented her from working and earning more income than she was earning at the time of the entry of the divorce judgment.
With regard to the survivor benefit, the record shows that, at the time of the entry of the divorce judgment, the former wife was named as the beneficiary of the former husband's military-retirement benefits upon his death. Upon the divorce, the former wife needed to execute within one year necessary documents to continue her beneficiary status, but the former wife had failed to execute those documents. Nevertheless, the former husband testified that he had not changed the beneficiary designation and that the former wife could appeal to have the survivor benefit secured. Accordingly, the trial court could have determined that the former wife remained entitled to the survivor benefit and that the former wife did not need to divert her income to retirement savings as the former wife had claimed.
"The obligation to pay periodic alimony may be modified when there has been a material change in the financial or economic needs of the payee spouse and the ability of the payor spouse to respond to those needs." McKenzie v. McKenzie, 568 So.2d 819, 820-21 (Ala. Civ. App. 1990). The burden of proving the existence of a material change in circumstances is upon the moving party. Boudreaux v. Boudreaux, 550 So.2d 1030, 1031 (Ala. Civ. App. 1989). Based on the foregoing evidence, showing that the income of the former wife had actually increased since the entry of the divorce judgment and that the survivor-beneficiary designation had not been lost, the trial court could have determined *741 that the former wife had not carried her burden of proving a material change of circumstances as alleged in her petition.
Citing Knight v. Knight, 226 So.3d 688 (Ala. Civ. App. 2016), the former wife nevertheless maintains that the trial court should have awarded her periodic alimony because of the disparity between her income and that of the former husband. In Knight, this court affirmed a judgment awarding the wife $2,000 per month in periodic alimony. The court reasoned as follows:
"After hearing all the evidence in this case, the trial court determined that the wife was to receive periodic alimony in the amount of $2,000 a month. In considering equitable factors such as the large discrepancy between the husband's income and earning capacity, and the wife's income and earning capacity, the parties' 40-year marriage, their ages and health, their respective expenses, and the husband's ability to pay, we conclude that substantial evidence supports the trial court's judgment to award the wife periodic alimony."
226 So.3d at 698 (emphasis added). By referencing the disparity in the incomes and earning capacities of the parties, along with the other factors present in that case, this court did not hold that a trial court must award periodic alimony in every case in which one former spouse has a significantly higher income than the other former spouse. The court merely indicated that the trial court could consider such a discrepancy when determining the need of the petitioning spouse, the ability of the other spouse to pay, and the equities of the case.
In this case, the former wife agreed to receive 60 months of rehabilitative alimony in the divorce-settlement agreement. The purpose of rehabilitative alimony is to provide temporary financial support for a former spouse while the former spouse undergoes vocational rehabilitation in order to restore or improve his or her earning capacity and become self-supporting. See Stanford, supra. The trial court heard evidence indicating that the former wife had initiated some efforts to improve her English in order to obtain further education but that the former wife had discontinued those efforts because she was "burnt out" and depressed. Although the former wife further blamed the former husband for sabotaging her rehabilitation efforts by failing to steadily pay her rehabilitative alimony, the trial court heard competing evidence suggesting that the former wife had voluntarily ceased her rehabilitation efforts and that the suspension of some rehabilitative-alimony payments by the former husband had not impacted the ability of the former wife to continue with those efforts.
Periodic alimony is designed to provide long-lasting support for a spouse who is otherwise unable to earn sufficient income to enjoy the former marital standard of living. See Alfred v. Alfred, 89 So.3d 786 (Ala. Civ. App. 2012). In assessing whether a former spouse shall receive periodic alimony, a trial court is not limited to merely comparing the incomes of the parties, it is also required to consider the earning capacity of the parties. See Shewbart v. Shewbart, 149 So.3d 609 (Ala. Civ. App. 2014). Based on the evidence in the record, the trial court could have determined that the former wife could earn more income but that she was voluntarily underemployed as a result of her lack of good-faith rehabilitation efforts. Under those circumstances, the trial court could have determined that it would be inequitable to award the former wife periodic alimony. See Stanford, 34 So.3d at 686 (Moore, J., dissenting) (arguing that a reservation of jurisdiction to award periodic alimony following a period of rehabilitative *742 alimony "only reserves to the trial court the authority to determine, based on the results of the recipient spouse's rehabilitation efforts and other material circumstances then existing, whether equity demands that the spouse receive periodic alimony designed to maintain his or her former standard of living and to fix an award based on that determination"). We conclude that the trial court did not exceed its discretion in denying the former wife periodic alimony.
Contempt
The former wife next argues on appeal that the trial court erred in failing to find the former husband in contempt for his failure to make his monthly rehabilitative-alimony payments on time and in full. She asserts that the evidence indicates that the former husband had the ability to pay the rehabilitative-alimony payments but that he had failed to do so and had unilaterally modified the terms of the parties' agreement with regard to those payments. "Absent an abuse of discretion, or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, the determination of whether a party is in contempt is within the sound discretion of the trial court." Shonkwiler v. Kriska, 780 So.2d 703, 706 (Ala. Civ. App. 2000). "To hold a party in contempt under either Rule 70A(a)(2)(C)(ii) (criminal contempt) or (D) (civil contempt), Ala. R. Civ. P., the trial court must find that the party willfully failed or refused to comply with a court order. T.L.D. v. C.G., 849 So.2d 200, 205 (Ala. Civ. App. 2002)." Bridges v. Bridges, 69 So.3d 885, 889 (Ala. Civ. App. 2011).
In the present case, the former husband admitted that, during certain periods following the entry of the divorce judgment, he had failed to pay the former wife the full amount of rehabilitative alimony as required by the divorce judgment. He testified, however, that he had reduced those payments only after consulting with the former wife and upon her agreeing to the reduction and the amount he was going to pay her. Although the former wife's testimony was somewhat less clear and, at one point, indicated that she had not agreed to the former husband's reduction in rehabilitative-alimony payments, the former wife also indicated that the former husband had informed her that he had to pay her less than the amount owed, that he had agreed to pay what he could afford at the time and to repay her the amounts owing, and that he had since repaid some of what he owed her. The trial court could have determined that the former husband's testimony was more credible and that the former husband had not willfully failed to make the alimony payments as ordered by the divorce judgment because the parties had entered into an agreement regarding those payments. See Mullins v. Sellers, 80 So.3d 935, 943 (Ala. Civ. App. 2011) (a party cannot be held in contempt of support provisions of a judgment when recipient agrees to accept payment on different terms than judgment provides). Because this court may not reweigh the evidence presented and because the trial court's conclusion that the former husband was not in contempt is supported by the evidence, we affirm the trial court's judgment insofar as it declined to hold the former husband in contempt with regard to his rehabilitative-alimony arrearage.
The former wife next argues that the trial court erred in failing to hold the former husband in contempt as a result of his failure to take the steps necessary to ensure that the former wife received the survivor benefit awarded to her in the divorce judgment. The former husband was required by the divorce judgment "to sign paperwork allowing the [former] wife to collect the survivor benefit" of his military-retirement benefits. However, as the *743 former husband testified, the former wife was required to execute the documentation to secure her beneficiary status. The former husband basically testified that he did not have the ability to secure the beneficiary status of the former wife unilaterally through execution of any document. See Stamm v. Stamm, 922 So.2d 920, 924 (Ala. Civ. App. 2004) ("[T]he inability to comply with the trial court's judgment is a valid defense in contempt proceedings."). The former wife did not rebut that showing. See J.K.L.B. Farms, LLC v. Phillips, 975 So.2d 1001, 1008 (Ala. Civ. App. 2007) (holding that burden of proof in contempt action shifts to complaining party after accused demonstrates through sufficient evidence his or her inability to comply with the trial court's judgment). Accordingly, the trial court was within its discretion to determine that the former husband was not in contempt.[3]
Attorney's Fees
The former wife also argues on appeal that the trial court erred in failing to award her attorney's fees based on the former husband's alleged contempt regarding the survivor benefit. She cites § 30-2-54, Ala. Code 1975, which provides:
"In all actions for divorce or for the recovery of alimony, maintenance, or support in which a judgment of divorce has been issued or is pending and a contempt of court citation has been made by the court against either party, the court may, of its discretion, upon application therefor, award a reasonable sum as fees or compensation of the attorney or attorneys representing both parties."
In the present case, the trial court declined to find the former husband in contempt. Having determined that the trial court did not err in that regard, we conclude that § 30-2-54 is not applicable in the present case. Because the former wife has failed to argue that she is entitled to attorney's fees pursuant to any authority other than § 30-2-54, any such argument is waived. See Gary v. Crouch, 923 So.2d 1130, 1136 (Ala. Civ. App. 2005) ("[T]his court is confined in its review to addressing the arguments raised by the parties in their briefs on appeal; arguments not raised by the parties are waived.").
The "Children's Money"
Paragraph 15 of the divorce-settlement agreement provides:
"The [former husband] agrees to pay rehabilitative alimony for a period of 60 months. The award of periodic alimony is specifically reserved. The total of the [former husband's] Military Retirement Benefits paid to the [former wife], plus rehabilitative alimony shall be Three Thousand Dollars ($3,000.00) per month. In addition, the [former husband] shall give to the [former wife] Two Hundred Dollars per week for the children to spend with the [former wife]."
The former husband interpreted the last sentence to require him to pay the former wife an additional $200 per week during the 60-month rehabilitative-alimony period for the former wife to spend with the parties' 5 children during their minority. Based on that interpretation, the former husband reduced the $200 weekly payment proportionately as each of the parties' minor children turned 18 years old, under the mistaken belief that 18 years is the age of *744 majority in Alabama. See Ala. Code 1975, § 26-1-1 (making the age of majority 19 years). The trial court determined that the provision required payment by the former husband of $40 for each minor child until each child reached 19 years of age. On appeal, the former wife argues that the trial court erred in construing the provision in that manner.
The former wife first asserts that the parties' agreement regarding the children's money was an integrated bargain between the parties and that it could not be modified by the court without the consent of both parties. The former wife failed, however, to raise this argument before the trial court; thus, we may not address the argument. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992) ("[An appellate c]ourt cannot consider arguments raised for the first time on appeal; rather, [its] review is restricted to the evidence and arguments considered by the trial court.").
The former wife next asserts that the provision regarding the children's money is unambiguous, and, thus, she argues, the trial court erred in interpreting it to allow the former husband to reduce the amount he owed as the children reached the age of majority.
"An agreement, including one merged into a divorce judgment, is ambiguous when it is reasonably susceptible to more than one meaning. Ex parte Littlepage, 796 So.2d 298 (Ala. 2001).
" 'When a trial court adopts a separation agreement, it is merged into the final judgment of divorce. A judgment of divorce is to be interpreted or construed like other written instruments. Whether an agreement is ambiguous is a question of law to be determined by the trial court. If the agreement is susceptible to more than one meaning, then an ambiguity exists. If only one reasonable meaning clearly emerges, then the agreement is unambiguous.'
" Wimpee v. Wimpee, 641 So.2d 287, 288 (Ala. Civ. App. 1994) (citations omitted)."
Nave v. Nave, 942 So.2d 372, 378 (Ala. Civ. App. 2005). "This court reviews de novo a trial court's determination whether an agreement incorporated into a divorce judgment is ambiguous." Judge v. Judge, 14 So.3d 162, 165 (Ala. Civ. App. 2009).
Although the trial court did not make a specific finding that the provision regarding the children's money is ambiguous, implicit in its holding is a conclusion that the provision is ambiguous. We agree that, as written, the provision at issue is susceptible to more than one meaning. In ordinarily parlance, a "child" is a son or a daughter, regardless of age, but, in divorce agreements, the term "child" customarily refers to an unemancipated son or daughter under the age of majority. See Black's Law Dictionary 290 (10th ed. 2014). In this case, the parties did not define the term "children," leaving that term susceptible to more than one meaning.
"Once the trial court determines that the terms of an agreement are doubtful or ambiguous, it may allow parol evidence to determine the intention of the parties." Lester v. Scarbrough, 668 So.2d 35, 37 (Ala. Civ. App. 1995). With regard to the provision of the parties' agreement addressing the children's money, the former wife testified that she had interpreted it to mean that the former husband was to pay her "child expenses." The former husband testified that his understanding of the provision was that it was directed to the minor children, and, accordingly, he had begun to reduce the amount of the children's money when a child reached the age of 18 years; he testified that he had later learned that, in Alabama, the age of majority is 19 years. Thus, it appears that both parties understood that the payments *745 were intended for the children during their minority.
In Ex parte Christopher, 145 So.3d 60, 64 (Ala. 2013), the supreme court considered the meaning of the phrase "children of the marriage" as found in § 30-3-1, Ala. Code 1975, which authorizes trial courts to award child support in divorce proceedings. Our supreme court determined that the legislature intended the phrase to refer solely to minor children. In reaching that determination, the supreme court noted that it had "uniformly defined 'child' in the context of divorce as a minor." 145 So.3d at 65. The court further noted that the common law had defined a "child" as a person under the age of majority and that the context of the statute at issue, dealing with the parent-child relationship, also related to the association between an adult and a minor in the adult's care. Id. (quoting Black's Law Dictionary 271, 1402 (9th ed. 2009)).
In this case, we are dealing with the terms of a divorce-settlement agreement as opposed to a statute, as was the case in Ex parte Christopher, but the same reasoning prevails. In the context of a divorce-settlement agreement, the term "child" ordinarily refers to a minor child unless the parties clearly and specifically intend for the payment of postminority support. See, e.g., Flomer v. Farthing, 64 So.3d 36, 42 (Ala. Civ. App. 2010). The provision at issue in this case is contained in a divorce-settlement agreement in which the former husband received sole physical custody of the children, subject to the former wife's right to regular visitation. In context, the parties intended that the former husband would pay the former wife $200 during her weekly visitation periods, which, absent unusual circumstances, would last only during the minority of the children. See Underwood v. Underwood, 816 So.2d 58 (Ala. Civ. App. 2001) (holding that visitation may not be awarded to the parent of an adult child when the parent is not providing any court-ordered postminority support). Reading the provision otherwise would mean that the parties had agreed that the former husband would provide the children a $200-per-week allowance to spend with their mother throughout their adulthood, which would be most extraordinary. See Sartin v. Sartin, 678 So.2d 1181, 1183 (Ala. Civ. App. 1996) (holding that the terms of a divorce-settlement agreement "are to be given their ordinary meaning, and the intentions of the parties are to be derived from them"). The trial court did not err in declining to adopt the rather unusual construction advocated by the former wife.
The trial court did not improperly modify the provision regarding the "children's money" but merely construed that provision in order to resolve the controversy between the parties. The construction placed on the provision complies with the intent of the parties as gleaned from the language used, the context in which that language was employed, and the testimony of the parties as to its meaning. The judgment is not due to be reversed on this point.
Conclusion
As outlined in this opinion, we affirm the trial court's judgment.
AFFIRMED.
Pittman and Donaldson, JJ., concur.
Thomas, J., concurs in the result, without writing.
Thompson, P.J., concurs in the result in part and dissents in part, with writing.
THOMPSON, Presiding Judge, concurring in the result in part and dissenting in part.
I disagree with the main opinion's affirmance of the trial court's denial of an *746 award of periodic alimony to Julia Yi Seymour ("the wife"). The wife contends in her appellate brief that the disparity in the parties' incomes, together with other facts of this case, warrants an award of periodic alimony. The wife moved to the United States in 1987, apparently when she married James Allen Seymour, Jr. ("the husband"), and English is not her native language. Before the divorce, she had worked intermittently at low-wage jobs. Following the divorce, the wife purchased her own house, but she testified that she lost that house to foreclosure when the husband failed to pay his entire rehabilitative-alimony obligation. She also stated that the foreclosure had damaged her credit rating. During the parties' 22-year marriage, the husband was in the military and completed his college education. The wife is correct that the husband's income is significantly more than her own. The wife presented evidence in which she asserted she would need $3,862 per month to live independently. The wife earns approximately $688 per month from her current employment, and, assuming that the husband pays her the military-retirement benefits as specified in the divorce judgment, she receives approximately $1,088 as her portion of those benefits.[4] At the time of the hearing in this matter, the wife had been living for several years with one of the parties' daughters, and she is unable to support herself independently.
"The question whether to award alimony is entrusted to the sound discretion of the trial court, and the court's ruling on that question will not be set aside absent an abuse of that discretion. O'Neal v. O'Neal, 678 So.2d 161, 164 (Ala. Civ. App. 1996). In deciding whether to award alimony, the trial court may consider several factors, including the parties' respective present and future earning capacities, their age and health, their conduct, the duration of the marriage, and the value and type of their marital property. Lutz v. Lutz, 485 So.2d 1174 (Ala. Civ. App. 1986). '[T]he purpose of periodic alimony is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage.' O'Neal, 678 So.2d at 164 (emphasis added)."
Crenshaw v. Crenshaw, 816 So.2d 1046, 1049 (Ala. Civ. App. 2001).
Given the facts of this case, I conclude that the trial court erred in failing to award the wife periodic alimony.
I also disagree with the main opinion's conclusion that the trial court did not err in failing to find the husband in contempt for failing to pay his rehabilitative-alimony obligations. The wife points out that the husband's employment had been furloughed for only 1 month of the 60 months in which the rehabilitative-alimony obligation was due. The husband still received a relatively high income during the times he claimed his work hours had been reduced. The wife points out that the husband did not pay all of the amounts due under the divorce judgment, and, at all times, he has had income sufficient to enable him to do so or to make up the payments he either missed or failed to pay in full. The trial court assessed an arrearage against the husband for his failure to pay rehabilitative alimony. During the *747 hearing on the merits, the trial court asked the parties' attorneys whether there was any question that the husband was claiming an inability to pay the rehabilitative-alimony obligation, and the husband's attorney did not state that inability to pay was a part of the husband's defense. Rather, the husband testified that he believed he had paid all amounts due under the divorce judgment.
The main opinion points out that the husband testified that the wife agreed to the reduced amounts of rehabilitative alimony he was willing to pay her during times when his income decreased. I do not interpret the wife's testimony on that issue as providing permission to the husband to pay only the amounts he deemed reasonable but, rather, that the wife agreed to cooperate with the husband when it was purportedly needed. The courts should encourage parties to work together when necessary. In this case, there is clear evidence indicating that the husband could have, but elected not to, repay the amounts he had underpaid the wife. The wife eventually had to file this action to enforce the divorce judgment. A contempt finding serves as a basis for an award of an attorney fee, which the wife requested for having to seek enforcement of the rehabilitative-alimony obligation that the husband failed or refused to pay. See § 30-2-54, Ala. Code 1975. The denial of the wife's contempt claim under these facts, and this court's affirmance of it, has operated to penalize the wife for working with the husband. I would reverse the trial court's decision failing to find the husband in contempt, as well as its denial of the wife's claim for an attorney fee for, among other reasons, having to seek enforcement of the rehabilitative-alimony obligation. § 30-2-54.
I disagree with the main opinion's conclusion that the "children's money" provision of the parties' divorce agreement that was incorporated into the divorce judgment was ambiguous.
"The courts of this state favor compromise and settlement of litigation, particularly in cases involving families. Junkin v. Junkin, 647 So.2d 797 (Ala. Civ. App. 1994). '[A] settlement agreement which is incorporated into a divorce decree is in the nature of a contract.' Smith v. Smith, 568 So.2d 838, 839 (Ala. Civ. App. 1990). A divorce judgment should be interpreted or construed as other written instruments are interpreted or construed. Sartin v. Sartin, 678 So.2d 1181 (Ala. Civ. App. 1996). 'The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them.' Id., at 1183. Whether an agreement is ambiguous is a question of law for the trial court. Wimpee v. Wimpee, 641 So.2d 287 (Ala. Civ. App. 1994). An agreement that by its terms is plain and free from ambiguity must be enforced as written. Jones v. Jones, 722 So.2d 768 (Ala. Civ. App. 1998). An ambiguity exists if the agreement is susceptible to more than one meaning. Vainrib v. Downey, 565 So.2d 647 (Ala. Civ. App. 1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous. Id. Finally, if a provision of an agreement is certain and clear, it is the duty of the trial court to determine its meaning, and the court's determination is afforded a heavy presumption of correctness and will not be disturbed unless it is clearly erroneous. Id."
R.G. v. G.G., 771 So.2d 490, 494 (Ala. Civ. App. 2000).
A determination as to whether a provision is ambiguous is reviewed de novo. Meyer v. Meyer, 952 So.2d 384, 391 (Ala. Civ. App. 2006). In his brief submitted to this court, the husband insists that the children's money provision is ambiguous, *748 but, other than stating that it is not child support, the husband does not explain any alternate meanings for that provision. In Meyer v. Meyer, 952 So.2d at 391-92, this court explained the difference between a patent ambiguity, which appears on the face of a document or judgment, and a latent ambiguity, as to which some collateral matter creates uncertainties in the language at issue. In this case, the trial court did not make a finding as to whether the children's money provision was ambiguous, but such a finding seems to be implicit in the judgment.
I conclude that the children's money provision of the divorce judgment was not ambiguous. See, generally, Romer v. Romer, 44 So.3d 514, 522 (Ala. Civ. App. 2009) (concluding that a provision in a divorce judgment was not ambiguous and, therefore, that the trial court could not "construe the agreement by reference to material that was not contained within the four corners of the parties' agreement"). The provision at issue provides simply that the husband shall pay the wife $200 per week for the children to spend with the wife. "Because the language in the agreement was not ambiguous, the trial court was not permitted to construe the agreement by reference to material that was not contained within the four corners of the parties' agreement." Romer v. Romer, 44 So.3d at 522. In order to reach the interpretation advanced by the husband and adopted by the trial court, the word "minor" must be inserted into the children's money provision before the word "children." Further, the children's money provision contains no language justifying a proportional reduction of the amount due under that provision as each child reaches the age of majority. "An agreement that is not ambiguous must be enforced as written." Granger v. Granger, 804 So.2d 217, 219 (Ala. Civ. App. 2001).
In justifying its reduction of the amount due under the children's money provision, the trial court referenced Ex parte Christopher, 145 So.3d 60 (Ala. 2013). In that case, our supreme court held that a noncustodial parent could not be required to pay postminority educational support for his or her child. The parties in this case did not dispute that the children's money provision does not constitute an award of child support, much less a provision setting forth a requirement that the husband pay postminority educational support.[5] Therefore, Ex parte Christopher, supra, has no application to the children's money provision.
Finally, as to the trial court's decision not to hold the husband in contempt for his failure to take steps necessary to ensure that the wife received the survivor benefit awarded to her in the divorce judgment, I concur in the result insofar as the main opinion holds that the trial court did not err as to this issue.

The former wife's postjudgment motion was denied by operation of law on September 12, 2016, and the former husband's postjudgment motion was denied by operation of law on September 15, 2016. See Rule 59.1, Ala. R. Civ. P.

With regard to her employment income, the former wife testified on direct examination:
"Q. Okay. And other than this [income from] Kay Jewelers that we're talking about, with about seven hundred dollars a month gross [income]-
"A. Yes, six hundred forty."

The former wife argues that the trial court should have amended its judgment to order the former husband to execute any documents necessary to secure to her the survivor benefit; however, we find that the divorce judgment already requires the former husband to sign any such documents, so the judgment of the trial court need not be reversed on this ground.

The wife testified that she works approximately 20 hours each week at a rate of $8 per hour, so her approximate monthly income is $688 (20 hours x $8 x 4.3 weeks per month). The husband presented evidence indicating that the military-retirement benefit amount for 2014 was $2,561 per month, and 42.5 per cent of that amount, i.e., the wife's share, is $1,088.43.

I also note that the husband did not seek to terminate that obligation, and he did not appeal the trial court's May 18, 2016, judgment insofar as it determined that the children's money provision was not subject to the 60-month time limitation on the rehabilitative-alimony obligation and that, instead, that obligation continued to accrue in the years after the termination of the rehabilitative-alimony obligation.