Rel: October 31, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0669

_____

**Ex parte Wendy L. Hudson**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Wendy Hudson**

**v.**

**Gary Hudson)**

**(Madison Circuit Court: DR-25-3131)**

BOWDEN, Judge.

Wendy L. Hudson ("the mother") petitions this court for a writ of mandamus directing the Madison Circuit Court ("the circuit court") to vacate an order it entered on June 9, 2025 ("the June 9 order"), which

purported to award Gary Hudson ("the father") visitation with the parties' disabled 29-year-old adult son ("the adult son"). Because we conclude that the circuit court lacked subject-matter jurisdiction to enter the June 9 order, we grant the mother's petition and issue the writ.

<u>Background</u>

The materials before us establish the following facts and procedural history. The parties were married on November 26, 1993, and were divorced by a judgment adopting the parties' settlement agreement on January 29, 2025. Two children were born during the marriage, both of whom had reached the age of majority by the time the parties were divorced. Although neither the parties' settlement agreement nor the divorce judgment contemplated the adult son's care or living arrangement, the adult son began living with the mother after the parties divorced. The father has had little contact with the adult son after he moved in with the mother. The father indicates in his answer that the adult son's living with the mother meant that he did not see the adult son and that he had never gone so long without seeing or communicating with him and was worried for his safety.

On March 18, 2025, the mother commenced an action ("the underlying PFA action"), in the circuit court requesting a protection-from-abuse order under the Alabama Protection from Abuse Act ("the PFA Act"), Ala. Code 1975, § 30-5-1 et seq., and seeking relief against the father for, among other things, allegedly stalking her and the adult son. The circuit court subsequently entered an ex parte protection order that enjoined the father from harassing, stalking, annoying, threatening, or engaging in conduct that would place the mother or the adult son in reasonable fear of bodily injury and from contacting the mother and the adult son. The ex parte protection order also enjoined the father from physical or violent contact with the mother and the adult son and prohibited the father from being within 500 feet of the mother's residence or school. The father was subsequently criminally charged in Madison County with "electronic stalking 1st," which is a felony.

The circuit court appointed a guardian ad litem ("GAL") for the adult son in the underlying PFA action on April 2, 2025. The GAL filed a report on April 22, 2025, noting that the adult son is autistic and requires "around the clock care and supervision." The GAL noted that he had no concerns for the welfare of the adult son with the father and

recommended that the circuit court enter an order allowing the father to have supervised visitation with the adult son.

The circuit court stayed the underlying PFA action on May 23, 2025, pending resolution of the father's criminal case. The circuit court concurrently ordered the mother to transport the adult son to a visitation session with the father for the next day, May 24, 2025. The visitation session was to be supervised by the GAL. Following the visitation session that the GAL supervised on May 24, 2025, the GAL filed a report on May 29, 2025, noting that the adult son had hugged the father upon seeing him and that the adult son had appeared to enjoy his time with the father.

The circuit court subsequently entered the June 9 order in which it purported to award the father unsupervised visitation with the adult son every weekend. On June 11, 2025, the mother filed a motion to set aside the June 9 order for lack of subject-matter jurisdiction. The circuit court has yet to rule on the mother's motion to set aside the June 9 order. The mother's petition for the writ of mandamus was docketed on August 18, 2025.

<u>Analysis</u>

I.    Whether the mother's petition was timely filed

Rule 21(a)(3), Ala. R. App. P., requires that "[t]he petition [for a writ of mandamus] shall be filed within a reasonable time." The presumptively reasonable time for filing a petition for a writ of mandamus seeking review of an interlocutory order is 42 days from the entry of the order. See, e.g., Ex parte Fiber Transp., L.L.C., 902 So. 2d 98, 100 (Ala. Civ. App. 2004)("Fiber Transport filed its petition for a writ of mandamus from [an] interlocutory order on July 1, 2004, well outside the 'presumptively reasonable' 42-day period contemplated by Rule 21[, Ala. R. App. P.].").

However, this court may consider the merits of a mandamus petition not filed within the presumptively reasonable time of 42 days from the entry of an interlocutory order if the mandamus petition challenges the subject-matter jurisdiction of the trial court to enter the order. See Ex parte Kelley, 333 So. 3d 156, 159 (Ala. Civ. App. 2021)("Although the wife did not file her mandamus petition within the presumptively reasonable period of 42 days after the entry of the July 2 order, … our supreme court has held that a petition for a writ of mandamus that challenges the jurisdiction of the trial court to enter the

order sought to be vacated need not be filed within the presumptively reasonable period prescribed by Rule 21[, Ala. R. App. P.]."); see also Ex parte Flint Constr. Co., 775 So. 2d 805, 808 (Ala. 2000)("[A] lack of subject-matter jurisdiction may be raised at any time ….").

The mother's petition challenges the subject-matter jurisdiction of the circuit court to enter the June 9 order. Therefore, we may consider the mandamus petition regardless of whether the mother failed to file it within the presumptively reasonable period of 42 days after the entry of the June 9 order.

II.  Whether the mother has demonstrated a clear legal right to an order vacating the June 9 order

The mother argues that a writ should issue because the circuit court lacked subject-matter jurisdiction to enter the June 9 order that purports to award the father visitation with the adult son.

"It is well settled under Alabama law that

"'" [a] writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: '"(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court."'"'"

6

Ex parte Avery, [Ms. CL-2025-0404, Aug. 1, 2025] ___ So. 3d ___, ___ (Ala. Civ. App. 2025). "[T]he question of subject matter jurisdiction is reviewable by a petition for a writ of mandamus." Ex parte Flint Constr. Co., 775 So. 2d at 808.

The mother's "clear legal right to the order sought" is the only element of mandamus review that is in dispute. The circuit court has an imperative duty to vacate an order that is void for lack of subject-matter jurisdiction, and the mother filed a motion to vacate the June 9 order on that basis. See Person v. Person, 236 So. 3d 90, 100 (Ala. Civ. App. 2017) ("A void order is a complete nullity, and it is the duty of the court on application of an interested party to vacate the void order at any time subsequent to its rendition."). We note that the circuit court has not ruled on the mother's motion to set aside the June 9 order, and, ordinarily, that failure would render the mother's mandamus petition premature. See Ex parte Montgomery Cnty. Dep't of Hum. Res., 294 So. 3d 811, 816 (Ala. Civ. App. 2019)("[U]nder Alabama law, mandamus relief will not issue from a supervisory court unless it is shown both that a respondent has a clear duty to perform and that the respondent has refused to perform it."); see, e.g., Ex parte Fancher, 272 So. 3d 654, 657 (Ala. Civ. App.

2018)("The former wife filed her petition for the writ of mandamus before the trial court had ruled on her pending motions [to dismiss and vacate]. … Therefore, the former wife's petition for the writ of mandamus seeking to compel the trial court to dismiss the action based on a lack of subject matter jurisdiction is premature because the trial court has not yet ruled on the motions."). Nonetheless, we have considered petitions challenging the propriety of orders involving the change of custody of children, even when the trial court has not yet denied a motion requesting relief from such an order. Ex parte Fancher, 272 So. 3d at 657 (listing cases). Because the circuit court has determined that the adult son requires a GAL and has purported to order visitation regarding the adult son, see Denney v. Forbus, 656 So. 2d 1205, 1206 (Ala. Civ. App. 1995)("[V]isitation rights are a part of custody determinations."), we will, in this case, consider the mother's mandamus petition in the absence of an adverse ruling. The mother does not have another adequate remedy by appeal to address whether the June 9 order is void -- the underlying PFA action is stayed pending the outcome of the father's criminal case, and the mother must otherwise continue to facilitate the visitation between the adult son and the father. The mother properly invoked the

8

jurisdiction of this court. See Section I, supra. Therefore, whether the mother is entitled to mandamus relief depends on whether she has demonstrated a clear legal right to an order directing the circuit court to vacate the June 9 order as void for a lack of subject-matter jurisdiction.

"'"Jurisdiction of the subject matter is the power to hear and determine cases of the general class to which the proceedings in question belong. The principle of subject matter jurisdiction relates to a court's inherent authority to deal with the case or matter before it."'" Ex parte Lester, 297 So. 3d 477, 482 (Ala. Civ. App. 2019) (quoting Ex parte Safeway Ins. Co. of Alabama, Inc., 148 So. 3d 39, 42 (Ala. 2013)).

> "'Problems with subject-matter jurisdiction arise if, for example, a party files a probate action in a juvenile court, a divorce action in a probate court, or a bankruptcy petition in a circuit court, because the nature or class of those actions is limited to a particular forum with the authority to handle them.'"

Id. (quoting Ex parte Safeway, 148 So. 3d at 43). "In determining a trial court's subject-matter jurisdiction, this Court asks '"only whether the trial court had the constitutional and statutory authority" to hear the case.'" Ex parte Safeway, 148 So. 3d at 43 (quoting Russell v. State, 51 So. 3d 1026, 1028 (Ala. 2010), quoting in turn Ex parte Seymour, 946 So. 2d 536, 538 (Ala. 2006)) (emphasis added).

It is well established that, under Ala. Code 1975, § 30-3-1, and Alabama's version of the Uniform Child Custody Jurisdiction and Enforcement Act, Ala. Code 1975, § 30-3B-101 et seq. , a circuit court has subject-matter jurisdiction to award visitation to a noncustodial parent if that visitation is in the best interests of the minor child. See Wilson-Hinson v. Hinson, 401 So. 3d 1161, 1163-64 (Ala. Civ. App. 2024) ("'The trial court has broad discretion in determining the visitation rights of a noncustodial parent ....'"; "Alabama law provides a noncustodial parent with reasonable visitation rights if that visitation is in the best interests of his or her child." (quoting Carr v. Broyles, 652 So. 2d 299, 303 (Ala. Civ. App. 1994)); see also Ex parte Thompson, 51 So. 3d 265, 272 (Ala. 2010) ("A trial court in establishing visitation privileges for a noncustodial parent must consider the best interests and welfare of the minor child and, where appropriate, … set conditions on visitation that protect the child." (emphasis added)).

Although it is undisputed that a circuit court has subject-matter jurisdiction concerning visitation between a noncustodial parent and a minor child, we are unaware of any statutory or common-law authority that would support the proposition that that jurisdiction extends to

10

visitation between a parent and an <u>adult</u> child. The father appears to recognize this because he argues instead that the circuit court had jurisdiction under the PFA Act to award him visitation with the adult son.[1] However, the father's argument is unpersuasive.

---

[1] We note that the purposes and plain language of the PFA Act do not tend to support the father's underlying premise that an alleged perpetrator of domestic violence or abuse in a PFA action can be awarded relief under the PFA Act. See Ala. Code 1975, § 30-5-1(b)("[The PFA Act] shall be liberally construed and applied to promote all of the following purposes: (1) To assure <u>victims of domestic violence</u> the maximum protection from abuse that the law can provide. (2) To create a flexible and speedy remedy to <u>discourage violence and harassment against family members</u> or others with whom the perpetrator has continuing contact. (3) To expand the ability of law enforcement officers to <u>assist victims</u>, to enforce the law effectively in cases of domestic violence, and to prevent further incidents of abuse. (4) To facilitate equal enforcement of criminal law by <u>deterring and punishing violence against family members</u> and others who are personally involved with the perpetrators. (5) To recognize that <u>domestic violence</u> is a crime that <u>will not be excused or tolerated</u>. (6) To <u>provide for protection orders to prevent domestic violence</u> and provide for court jurisdiction and venue; to provide for court hearing for petitions for relief; and to <u>provide for the contents and the issuance of protection orders</u>." (emphasis added)); see also Ala. Code 1975 § 30-5-2(5)(defining a "protection order" as "[a]ny order of protection from abuse issued under [the PFA Act] <u>for the purpose of preventing acts of abuse</u> as defined in [the PFA Act]" (emphasis added)); Ala. Code 1975 § 30-5-4("<u>The plaintiff's right to relief</u> under [the PFA Act] shall not be affected by his or her leaving the residence or household to avoid further abuse. … <u>Plaintiffs shall not be barred from relief</u> under [the PFA Act] because of other proceedings or judgments involving the parties in a court of this state or any other state." (emphasis added)); and Ala. Code 1975, § 30-5-5(d)("The court shall issue separate orders that specifically and independently state the prohibited behavior and <u>relief granted in order</u>

The father cites § 30-5-7(4) of the PFA Act, which states that a circuit court may "[a]ward temporary custody of any children of the parties." Even if we accept the father's premise that the word "child" under the PFA Act includes adult children, which we do not, the circuit court purported to award <u>visitation</u> -- not temporary <u>custody</u> -- of the adult son to the father. There was no prior custody determination regarding the adult son, and the June 9 order also did not make a custody determination from which the circuit court could have awarded visitation. See <u>Denney</u>, 656 So. 2d at 1206 ("[V]isitation rights are a part of custody determinations." ; "the court makes visitation determinations as part of custody determinations …."); cf. Ala. Code 1975, § 30-3-151(5) (defining "sole physical custody" as custody in which "[o]ne parent has sole physical custody and the other parent has rights of visitation except as otherwise provided by the court"). Although a circuit court may award

<u>to protect the victim and the victim's immediate family</u> …." (emphasis added)).

Even if we agreed with the father that he could have been awarded relief under the PFA Act as the defendant and alleged perpetrator of domestic abuse in the underlying PFA action, which we do not, the circuit court did not have jurisdiction under the PFA Act to award the father visitation with the adult son for the additional reasons stated in this opinion.

12

temporary custody of children under the PFA Act, the circuit court did not do so here; rather, in the absence of a custody determination, the circuit court purported to award the father visitation with the adult son. Furthermore, as noted supra, at note 1, the father's contention that the circuit court could have awarded him temporary custody of the adult son under the PFA Act is severely undermined by the fact that he is the defendant and alleged perpetrator of domestic abuse against the mother and the adult son in the underlying PFA action.

The father also cites § 30-5-7(b)(6) of the PFA Act, which states that a circuit court may "[e]njoin the defendant from removing any children from the individual having legal custody of the children, except as subsequently authorized by a custody or visitation order issued by a court of competent jurisdiction." The father is the defendant in the underlying PFA action, and, as stated supra, there has been no custody determination regarding the adult son. The circuit court could not have awarded visitation to the father under this provision of the PFA Act.

Finally, the father cites § 30-5-7(b)(9) of the PFA Act, which states that a circuit court may "[o]rder other relief as it deems necessary to provide for the safety and welfare of the plaintiff or any children and any

13

person designated by the court." (Emphasis added.) After supervising the May 24, 2025, visit, the GAL reported that he "has absolutely no concerns" for the adult son's welfare while in the father's care. However, there is nothing in the materials before us that suggests that the circuit court deemed visitation with the father necessary to provide for the safety and welfare of the adult son. We note that the underlying PFA action contained allegations that the father had stalked the mother and the adult son and that the circuit court had initially issued an ex parte protection order enjoining the father from committing further abuse against the mother and the adult son. Even though the GAL reported that he did not have any concerns for the adult son's welfare while the adult son was with the father, we cannot conclude that the circuit court deemed visitation with the father necessary to provide for the adult son's safety and welfare -- especially in the context of the underlying PFA action.

Based on the materials before us, it appears that the circuit court concluded that it could order visitation in this matter based on the adult son's disability. Both parties agree that the adult son has a disability, and the circuit court implicitly acknowledged the adult son's lack of

capacity when it appointed a GAL to represent him. See Ala. R. Civ. P. 17(c) ("The court <u>shall</u> appoint a guardian ad litem (1) for a minor defendant, or (2) <u>for an incompetent person</u> not otherwise represented in an action …." (emphasis added)). However, the adult son's disability or lack of capacity does not in and of itself provide the father with a right to visitation.[2] See <u>Underwood v. Underwood</u>, 816 So. 2d 58, 60-61 (Ala. Civ. App. 2001) ("[W]e find no caselaw to support the father's argument that the trial court had authority to order visitation for a self-supporting handicapped adult."); see also <u>Seymour v. Seymour</u>, 241 So. 3d 733, 745 (Ala. Civ. App. 2017) (citing <u>Underwood</u>, 816 So. 3d at 60, favorably for the rule that "visitation may not be awarded to the parent of an adult

---

[2]We also recognize that a circuit court has concurrent jurisdiction with a probate court to order protective services for a disabled or incapacitated adult in need of care and protection because of danger to his or her health or safety under the Adult Protective Services Act of 1976 ("the APSA"), Ala. Code 1975, § 38-9-1 et seq. Under the APSA, a circuit court or a probate court may appoint a guardian for a person in need of protective services, but doing so is not required. Ala. Code 1975, § 38-9-6(g).

According to the materials before us, neither party petitioned the circuit court for protective services or protective placement of the adult son in the underlying PFA action, so the circuit court did not have jurisdiction under the APSA to enter the June 9 order.

15

child when the parent is not providing any court-ordered postminority support").

The nature of the visitation that the circuit court purported to award in the June 9 order -- i.e., visitation between a disabled adult and a parent who is isolated from the disabled adult -- is the type of visitation made available by Alabama's Uniform Guardianship and Protective Proceedings Act ("the AUGPPA"), Ala. Code 1975, § 26-2A-1 et seq.[3] Under the AUGPPA, "[a] relative may file a petition with the court to compel visitation with a ward from whom he or she has been isolated." Ala. Code 1975, § 26-2A-113(a). "The petition shall be filed in the court having jurisdiction over the guardianship of the ward." § 26-2A-113(b).

---

[3]The mother did not specifically argue that the circuit court lacked subject-matter jurisdiction to enter the June 9 order because the AUGPPA vests jurisdiction in the probate courts to award visitation between a relative and a disabled adult from whom the relative is isolated. However, because the issue of subject-matter jurisdiction is before us, we are not limited to considering the specific grounds raised by the mother in her petition. See Ex parte T.M., [Ms. CL-2024-0492, Nov. 15, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024)("[W]hen there is an apparent issue of subject-matter jurisdiction, 'our review … is not limited to grounds specifically raised in a mandamus petition.' … This court has a 'duty to consider a lack of subject-matter jurisdiction ex mero motu.'" (quoting Ex parte T.C., 63 So. 3d 627, 630 (Ala. Civ. App. 2010), superseded on other grounds by statute, as recognized in Ex parte F.T.G., 199 So. 3d 82, 86 (Ala. Civ. App. 2015)).

The AUGPPA provides the following definitions:

"(3)    Court. A probate court of this state.

"….

"(7)    Guardian. A person who has qualified as a guardian of a minor or incapacitated person ….

"(8)    Incapacitated person. Any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, physical or mental infirmities accompanying advanced age, chronic use of drugs, chronic intoxication, or other cause (except minority) to the extent of lacking sufficient understanding or capacity to make or communicate responsible decisions.

"…

"(22) Ward. A person for whom a guardian has been appointed."

§ 26-2A-20, Ala. Code 1975.

The mother has alleged that "[t]here is a pending proceeding in probate court to address conservatorship or guardianship over [the adult son]."[4] Petition at 15. Although the mother does not identify which probate court, under the AUGPPA that probate court has jurisdiction over the guardianship proceeding concerning the adult son. Ala. Code 1975, § 26-2A-31(c). Because a probate court has jurisdiction over the

---

[4]The father does not dispute this allegation in his answer; therefore, we must consider that averment of fact as true. See Ex parte Turner, 840 So. 2d 132, 134 (Ala. 2002).

adult son's guardianship proceeding, that probate court -- not the circuit court -- currently has jurisdiction to compel visitation between the adult son and the father. § 26-2A-113(b) ("The petition [to compel visitation with a disabled adult for whom a guardian has been appointed] shall be filed [by the relative from whom the disabled adult has been isolated] in the court having jurisdiction over the guardianship of the ward.").

Therefore, because the probate court has jurisdiction to award the type of visitation that the circuit court purported to award the father -- i.e., visitation between a relative and a disabled adult from whom the relative is isolated -- we conclude that the circuit court lacked subject-matter jurisdiction to enter the June 9 order. See Ex parte Lester, 297 So. 3d at 482 ("'Subject-matter jurisdiction is a simple concept: … "The term means not simply jurisdiction of the particular case then occupying the attention of the court but jurisdiction of the class of cases to which the particular case belongs."'" (quoting Ex parte Safeway, 148 So. 3d at 42-43)).

<u>Conclusion</u>

18

The mother has demonstrated that she has a clear legal right to an order from this court directing the circuit court to vacate the June 9 order as void for a lack of subject-matter jurisdiction.

We recognize that the circuit court's intention was likely to facilitate and encourage a parent-child relationship between the father and the adult son. However, the circuit court lacked subject-matter jurisdiction to enter the June 9 order. Under the AUGPPA, the probate court currently has jurisdiction to award the type of visitation that the circuit court purported to award in the June 9 order -- visitation between a disabled adult and a relative who is isolated from the disabled adult.

We note that our decision does not foreclose the father from seeking court-ordered visitation with the adult son. Under the AUGPPA, the father may petition the probate court for visitation if he believes that he has been isolated from the adult son.

For the aforementioned reasons, we grant the mother's petition and issue a writ directing the circuit court to vacate the June 9 order as void for lack of subject-matter jurisdiction.

PETITION GRANTED; WRIT ISSUED.

Hanson and Fridy, JJ., concur.

Moore, P.J., concurs in the result, with writing.

Edwards, J., concurs in the result, without writing.

MOORE, Presiding Judge, concurring in the result.

Article VI, § 142(b), of the Alabama Constitution of 2022 provides that "[t]he circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law." In 1917, the legislature conferred upon the circuit courts the jurisdiction of the chancery courts, which were abolished. See Coprich v. Jones, 406 So. 3d 58, 64 (Ala. 2024). At common law, the chancery courts exercised jurisdiction to address the custody of infant children, but not adult children. Id. at 65. Accordingly, this court has held that a circuit court generally has no jurisdiction to award visitation between a parent and his or her adult child, even if the child is disabled or incompetent. See Underwood v. Underwood, 816 So. 2d 58 (Ala. Civ. App. 2001) (affirming the dismissal of a visitation petition relating to an adult disabled child but suggesting, in dicta, that, if a parent was paying postminority child support, the parent could maintain an action for visitation).

Section 30-5-7(b)(4), Ala. Code 1975, authorizes a circuit court to award temporary custody of "any children of the parties" in an ex parte protection order, and § 30-5-7(c)(2) permits a circuit court to "[s]pecify arrangements for visitation of any children by the defendant" in a final

21

protection order. (Emphasis added.) However, the term "children," when used in a statute relating to custody matters, refers solely to minor children unless the context clearly provides otherwise. See Ex parte Christopher, 145 So. 3d 60 (Ala. 2013). Nothing in the Protection from Abuse Act, Ala. Code 1975, § 30-5-1 et seq., indicates that the legislature intended for the term "children" to include adult disabled children. The legislature knows how to clearly empower a circuit court to enter a visitation order regarding an adult disabled child, see Ala. Code 1975, § 26-2A-113 (providing that, in guardianship proceedings, a probate court may transfer to a circuit court a visitation petition relating to a ward who is an incapacitated person), and it elected not do so in the Protection from Abuse Act.

Thus, whether the Madison Circuit Court based the June 9, 2025, visitation order on the Protection from Abuse Act or its "general jurisdiction," the court acted without subject-matter jurisdiction. The visitation order is void. Therefore, I concur that the writ of mandamus should be issued to compel that the visitation order be vacated.